JOURNAL ENTRY AND OPINION
 1 {¶ 1} Appellant Kevin Fletcher appeals the trial court's denial of his motion to suppress. He assigns the following error for our review:
 "The trial judge erred by overruling the defense motion to suppress the illegal stop of the appellant."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On October 14, 2005, the Cuyahoga County Grand Jury indicted Fletcher for one count each of drug possession, drug trafficking, and possession of criminal tools. At his arraignment, Fletcher pled not guilty to the indictment and subsequently filed a motion to suppress, which the trial court denied. *Page 3 
 Court's Findings {¶ 4} After receiving testimony at the suppression hearing, the trial court made the following findings:
 "All right. The Court has reviewed the notes it took and the testimony that I've heard here at this hearing on State versus Kevin Fletcher, Case Number 471497. And the Court will deny the Motion to Suppress for a few reasons. Number one, we know that the officer who stopped Mr. Fletcher was not the one who observed him, but he based his activity — the officer based his activity and chase on the remarks made to him by Detective Clark. The area in which the activity occurred was an area of very heavy drug activity in which weapons were prevalent. And there were many street complaints heard about the — indeed heard about the sweep operation that was being conducted by Vice or Narcotics. And the — there were — in fact there were all kinds of different departments that were involved with this. Normally, the fact that it's a high crime area alone is not enough. But the officer who observed Detective Clark had much experience about how drug transactions occurred. The hand-to-hand on a bike, the defendant pedaled away obviously trying to evade the officers. And the nearness — what I thought was particularly compelling was the nearness of the activity. That even if it were right there at 1261 — they were at 1261 Norwood or close by. The proximity of activity with the biker I find particularly compelling as well, so that with all these facts the Court finds there is reasonable suspicion and articulable facts to arrest the defendant."[1]
 {¶ 5} Upon reviewing the record, we conclude that the court's findings are supported by competent, credible evidence. The State presented four detectives, Clark, Cudo, Baeppler, and Klamert, who testified that on the night of August 18, 2005, they were conducting street corner sweeps and surveillance in the vicinity of Norwood Avenue in Cleveland, Ohio. The surveillance was initiated as a result of a *Page 4 
controlled drug buy the previous night in front of 1261 Norwood Avenue and because of a series of incidents where the police were fired upon when they responded to the area.
 {¶ 6} Detective Clark testified that he was in an undercover car conducting surveillance on the target location when he observed Fletcher on a bicycle near the corner of Norwood and Superior Avenue. Detective Clark observed Fletcher engage in what he believed to be a hand-to-hand drug transaction with another male. Detective Clark stated that Fletcher handed something to the older man who then walked away.
 {¶ 7} Detective Clark requested backup from the other officers located near the target location. As the officers approached, Fletcher proceeded to ride his bicycle westbound towards Superior Avenue out of Detective Clark's field of vision. Detective Clark then resumed surveillance on the original target location, while the other officers pursued Fletcher.
 {¶ 8} Detective Clark testified that the encounter between Fletcher and the man was brief. He could not see what was actually exchanged, and he stated it was possible that Fletcher and the man were just shaking hands.
 {¶ 9} Detective Baeppler testified that he received the radio broadcast that a male suspect was fleeing on a bicycle. He caught sight of Fletcher and initiated pursuit. Fletcher attempted to flee once the lights and sirens were activated. According to Detective Baeppler, Fletcher was pedaling quickly and repeatedly *Page 5 
looked back at them. Fletcher cut across an open field, rode in the direction of a laundromat, and jumped off the bicycle.
 {¶ 10} As Fletcher jumped off the bicycle, Detective Baeppler apprehended him. Detective Baeppler conducted a pat-down search and recovered thirteen rocks of crack cocaine from Fletcher's left front pants pocket. Detective Baeppler testified that the amount of crack cocaine was significant and had a unique feel.
 Motion To Suppress {¶ 11} In his sole assigned error, Fletcher argues the trial court erred in denying his motion to suppress. We disagree.
 {¶ 12} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[2] Thus, the credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[3] Accordingly, in our review we are bound to *Page 6 
accept the trial court's findings of fact when they are supported by competent, credible evidence.[4]
 {¶ 13} The Fourth and Fourteenth Amendments to the United States Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification.[5] Section 14, Article I of the Ohio Constitution protects the same interests in a manner consistent with theFourth Amendment to the United States Constitution.[6]
 {¶ 14} In Terry v. Ohio,[7] the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.[8] Furthermore, the standard against which the facts are judged must be an objective one: "Would the facts available to the officer at *Page 7 
the moment of the seizure or the search `warrant a man of reasonable caution in the belief that the action taken was appropriate?"[9]
 {¶ 15} An objective and particularized suspicion that criminal activity was afoot must be based on the entire picture, a totality of the surrounding circumstances.[10] Furthermore, these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.[11]
 {¶ 16} In the instant case, our analysis of the totality of the circumstances begins with Detective Clark's observation of Fletcher engaging in a hand-to-hand transaction typical of drug dealing in an area known for illegal drug activity. The detectives testified that they were conducting street corner sweeps and surveillance on a particular house following reports of drug activity and shots fired at the police. Detective Clark testified that he could not see what was exchanged, but based on his extensive history as a narcotics officer, he surmised a hand-to-hand drug transaction had occurred. *Page 8 
 {¶ 17} Although, the observed hand-to-hand exchange did not take place directly in front of the target house, Detective Clark testified that the exchange took place approximately one hundred feet away. An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.[12] However, officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.[13] Based on the totality of the circumstances, Detective Clark was justified in broadcasting the suspicious activity he observed in order to initiate an investigatory stop.
 {¶ 18} Moreover, it was not merely Detective Clark's observation of Fletcher engaging in what he believed to be a hand-to-hand exchange in an area of heavy narcotics trafficking that aroused suspicion, but his unprovoked flight upon noticing the police. Detective Baeppler testified that once they activated their sirens, Fletcher began pedaling faster, while repeatedly looking over his shoulders. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.[14] Flight is the consummate act of evasion. It is not necessarily indicative of wrongdoing, but *Page 9 
it is certainly suggestive of such.[15] Under the circumstances, the detective in pursuit was justified in suspecting that Fletcher was involved in criminal activity and, therefore, in investigating further.
 {¶ 19} We conclude that the totality of the circumstances justified the radio broadcast, which resulted in Fletcher being apprehended. The trial court's decision was based on competent credible evidence. Thus, the motion to suppress was properly denied. Accordingly, we overrule Fletcher's sole assigned error.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and *Page 10 
CHRISTINE T. MCMONAGLE, J., CONCUR
[1] Tr. at 99-100.
[2] See State v. Robinson (1994), 98 Ohio App.3d 560; State v.Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th Dist. No. 90CA7.
[3] See State v. Mills (1992), 62 Ohio St.3d 357; State v.Fanning (1982), 1 Ohio St.3d 19. 
[4] See State v. Harris (1994), 98 Ohio App.3d 543.
[5] United States v. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690,66 L.Ed.2d 621; Reid v. Georgia (1980), 448 U.S. 438, 440,100 S.Ct. 2752, 65 L.Ed.2d 890; Terry v. Ohio (1968), 392 U.S. 1, 19,88 S.Ct. 1868, 20 L.Ed.2d 889.
[6] State v. Lindway (1936), 131 Ohio St. 166; State v.Burkholder (1984), 12 Ohio St.3d 205.
[7] (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889.
[8] Id. at 21.
[9] Id. at 21-22.
[10] State v. Bobo (1988), 37 Ohio St.3d 177; United States v.Rickus (C.A. 3, 1984), 737 F.2d 360, 365.
[11] United States v. Hall (C.A.D.C. 1976), 525 F.2d 857, 859;State v. Freeman (1980), 64 Ohio St.2d 291, 295.
[12] Brown v. Texas (1979), 443 U.S. 47, 99 S.Ct. 2637,61 L. Ed.2d 357.
[13] Id.
[14] State v. Burnett (Apr. 8, 2003), 10th Dist. No. 02AP-863, 2003-Ohio 1787; See, also Illinois v. Wardlow (2000), 528 U.S. 119, 124,145 L.Ed.2d 570, 120 S.Ct. 673.
[15] United States v. Cortez (1981), 449 U.S. 411, 418,66 L.Ed.2d 621, 101 S.Ct. 690. *Page 1