*Supp. 3 Opinion
CHIANTELLI, J.
Defendant and respondent Dennis Morgan (hereinafter defendant) was arrested on September 4, 1988, at a sobriety checkpoint organized by the California Highway Patrol (CHP). Defendant was charged with a violation of California Vehicle Code section 23152, subdivisions (a) and (b), and with an allegation of a prior conviction of section 23152, subdivision (a). Prior to trial, defendant brought a motion to suppress all evidence seized by the CHP, including the results of a chemical test administered on the defendant, under Penal Code section 1538.5. The trial court granted the motion, and the People appeal from that ruling.
The facts of the case are not in dispute. While driving west on Bryant Street in San Francisco, defendant turned right onto Sixth Street, where a CHP officer immediately guided him into the CHP sobriety checkpoint. There were no signs on Bryant Street (a one-way street) to advise drivers that there was a checkpoint on Sixth Street. After detecting alcohol on the defendant’s breath, a CHP officer led the defendant through a variety of field sobriety tests. When defendant failed the tests, he was arrested on suspicion of driving under the influence of alcohol, and taken to San Francisco County jail where he was given an intoxilizer test which revealed that his blood contained more than 0.10 percent alcohol.
At the hearing on the motion to suppress, the trial judge granted the motion on two grounds: first, the prosecution had failed to carry its burden in showing there was adequate advance publicity as required by the Supreme Court in Ingersoll v. Palmer (1987) 43 Cal.3d 1321 [241 Cal.Rptr. 42, 743 P.2d 1299]; second, due to the lack of signs on Bryant Street, defendant was not afforded an opportunity to turn away from the checkpoint. The People limit their appeal to the former rationale.
The issue raised by this appeal is similar if not identical to the issue raised in the case of People v. Mathis ((Nov. 13, 1989) App. Dept. Super. Ct., City and County of San Francisco, Crim. A No. 4124), which we decided in an unpublished written opinion. Because this appeal involves a legal issue of continuing public interest, we have ordered this opinion published so it may be referred to as precedent in subsequent proceedings. (Cal. Rules of Court, rule 976.)
In Ingersoll v. Palmer, supra, the California Supreme Court upheld the detention of motorists at a sobriety checkpoint in Burlingame, despite the absence of any reasonable individualized suspicion of wrongdoing, on the theory that such detentions were permissible administrative inspections primarily intended to enhance public safety by deterring potential lawbreak *Supp. 4 ers from driving while intoxicated. Applying the balancing test articulated in People v. Hyde (1974) 12 Cal.3d 158, 166-169 [115 Cal.Rptr. 358, 524 P.2d 830], the Ingersoll court concluded that the intrusiveness on an individual’s liberty interest caused by a checkpoint detention is outweighed by the substantial governmental and public concern about drunk driving and the demonstrated or potential deterrent effect of sobriety checkpoints in keeping drunk drivers off the road. (Ingersoll v. Palmer, supra, 43 Cal.3d at pp. 1338-1339.)
Taking note of a number of decisions of courts of other states and an opinion of the California Attorney General, the court identified eight factors to “provide functional guidelines for minimizing the intrusiveness of the sobriety checkpoint stop.” (Ingersoll v. Palmer, supra, 43 Cal.3d at p. 1341.) However, in its discussion of one of the eight factors, the Ingersoll court pronounced: “Advance publicity is important to the maintenance of a constitutionally permissible sobriety checkpoint. Publicity both reduces the intrusiveness of the stop and increases the deterrent effect of the roadblock.” (Id., at p. 1346.) Applying this factor to the Burlingame checkpoints, the court found “substantial advance publicity accompanied each sobriety checkpoint instituted.” (Id., at p. 1347.)
The People contend that advance publicity is not a requirement of a permissible sobriety checkpoint, but merely one of several guidelines offered by the Ingersoll court to help ensure a balance between the governmental and individual interests involved. Indeed, Ingersoll does not expressly state that police departments must strictly apply each of the eight factors. On this appeal, however, we need not determine whether all eight guidelines, singly or in more limited combinations, must be observed to constitute “substantial compliance” with the holding of Ingersoll.
(2) Nevertheless, from the standpoint of the ultimate purpose and legal theory supporting administrative motorist detentions, we hold that advance warning and publicity of sobriety checkpoints is essential if such checkpoints are to serve as an effective deterrent, because it may be impossible to deter an uninformed public. Ingersoll’s requirement of “substantial advance publicity” means that checkpoint authorities must do more than simply inform the press about their plan to operate a checkpoint. To be constitutionally permissible, the press relations strategy implemented by the authorities must actually generate “substantial advance publicity.”
Although the requirement of advance publicity has been given inadequate attention in some cases and, apparently, held unimportant in others (People v. Bartley (1985) 109 Ill.2d 273 [486 N.E.2d 880]; State v. Deskins (1983) 234 Kan. 529 [673 P.2d 1174]; Kinslow v. Commonwealth (Ky.Ct.App. *Supp. 5 1983) 660 S.W.2d 677; State v. Coccomo (1980) 177 N.J. Super. 575 [427 A.2d 131]), other sister state decisions invalidated checkpoints on state grounds where no advance publicity was proven (State v. Koppel (1985) 127 N.H. 286 [499 A.2d 977]; State ex rel. Ekstrom v. Justice Ct. of State (1983) 136 Ariz. 1 [683 P.2d 992] (Feldman, J., conc.) [“the efficacy of a deterrent roadblock is heightened by advance publicity in the media and on the highways”].) We also note, however, that several state courts have upheld sobriety checkpoints when evidence of substantial advance publicity was established. (State v. Superior Court (1984) 143 Ariz. 45 [691 P.2d 1073] [press releases, purchase of radio, television and newspaper advertisements]; Commonwealth v. Trumble (1985) 396 Mass. 81 [483 N.E.2d 1102] [press releases sent to 400 media outlets; individual police officers personally spoke to media representatives; several newspapers and broadcast stations disseminated information prior to roadblock]; Little v. State (1984) 300 Md. 485 [479 A. 2d 903] [extensive statewide publicity campaign announcing pilot checkpoint program; widespread media coverage after series of press conferences].)
In this case, the People offered insufficient evidence of advance publicity at the hearing on the motion to suppress to satisfy the Ingersoll requirement. A CHP sergeant testified that another officer followed CHP procedures and sent a notice to the Bay City News “somewhere between 48 and 24 hours prior to our set up,” and then called Bay City News on the evening of the checkpoint to advise where the checkpoint would be set up. There was no evidence of advance information given by the media to an uninformed public. Although Evidence Code section 664 allows a presumption that official duty has been regularly performed, this presumption does not apply on an issue as to lawfulness of an arrest if it is found or otherwise established that the arrest was made without a warrant. (People v. Carson (1970) 4 Cal.App.3d 782 [84 Cal.Rptr. 699].)
The sergeant also testified that a television crew was on the scene on the night of the checkpoint. In our view, the fact that a television news crew was present during the operation of the checkpoint does not have “any tendency in reason” to prove that the public was given advance knowledge of the existence of a sobriety checkpoint. (Evid. Code, § 210.) No reasonable inference can be drawn from the evidence of on-the-spot coverage by the television media that the public was given advance knowledge of a sobriety checkpoint.
It is therefore ordered that the order granting the motion to suppress made and entered in the above-entitled cause is affirmed. The clerk of the court is hereby ordered to forward a copy of this opinion to the First
*Supp. 6 District Court of Appeal, Division One, upon the judgment becoming final as to this court.
Kay, P. J., and Alvarado, J., concurred.