Appellant Sandy Hill appeals his conviction, in the Stark County Court of Common Pleas, for one count of possession of cocaine. The following facts give rise to this appeal.
On March 16, 1999, Canton City Police Officer Michael Peterson and his partner, Officer Nick Mercorelli, responded to a radio dispatch to the 2000 block of 2nd Street to investigate a loud music complaint. Due to the reputation of this area, Officer Peterson radioed for a K-9 back-up unit. The officers arrived at the scene with Canton Police Officer Lester Marino and his K-9 partner. Officer Peterson recognized appellant, standing in the middle of the busy street. Officer Peterson had previously warned appellant not to stand in the middle of the street.
Officer Peterson exited the cruiser and approached appellant. The officer made eye contact with appellant and appellant began side-stepping as he walked away. Officer Peterson yelled, at appellant, to "come here", but appellant took off running. Officer Peterson followed appellant. Appellant ran to the side of the house which he had been standing in front of, but unexpectedly came across a large dog tied to a dog house. As Officer Peterson approached appellant, he saw appellant make an underhand toss of a plastic bag that had been cupped in his left hand. Officer Peterson noticed a substance, that looked like crack cocaine, fly from the bag as appellant tossed it. Officer Peterson grabbed appellant and arrested him.
Officer Peterson handcuffed appellant and conducted a pat-down search. Officer Peterson found $240 in appellant's front pocket. Appellant told Officer Peterson that he was holding the money for his girlfriend. After securing appellant, Officer Peterson collected the crack cocaine. He retrieved five or six rocks of crack cocaine and placed them in the plastic bag.
As a result of this incident, the Stark County Grand Jury indicted appellant, on March 24, 1999. Appellant entered a plea of not guilty on March 26, 1999. Thereafter, on April 12, 1999, appellant filed a motion to suppress. The trial court conducted an evidentiary hearing, on appellant's motion, on April 26, 1999. The trial court overruled appellant's motion. This matter proceeded to trial on May 12, 1999. Following deliberations, the jury indicated to the trial court that it was unable to reach a verdict. The trial court eventually declared a mistrial and discharged the jury.
A second jury trial commenced on May 27, 1999. Prior to the close of the state's case, the state informed appellant that it was not going to call Officer Marino or Officer Mercorelli, to testify, as it had done in the first trial. Appellant believed the testimony of the two officers to be critical to his defense and requested a continuance because he had not subpoenaed either officer. The trial court denied appellant's motion.
At trial, two of appellant's cousins testified on his behalf. Keya Hill claimed she was standing in front of her uncle's house taking pictures of appellant. She testified that Officer Peterson arrived on the scene, jumped out of the police cruiser, and immediately began chasing appellant. She further testified that appellant never threw anything from his hand. Stan Bryant also testified on appellant's behalf. He also claimed to be taking pictures of appellant when Officer Peterson arrived on the scene, jumped out his police cruiser and began chasing appellant.
Following deliberations, the jury returned a verdict finding appellant guilty as charged in the indictment. The trial court sentenced appellant to a prison term of seventeen months.
Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration.
 I. THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE ABANDONMENT OF PROPERTY WAS INVOLUNTARILY PROMPTED BY THE UNLAWFUL SEIZURE OF APPELLANT BY THE POLICE THEREBY VIOLATING THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.
 II. MR. HILL WAS DENIED HIS RIGHTS TO DUE PROCESS OF LAW, A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL BY THE TRIAL COURT'S REFUSAL TO GRANT AN OVERNIGHT CONTINUANCE TO SECURE THE ATTENDANCE OF TWO WITNESSES CRITICAL TO THE APPELLANT'S DEFENSE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION.
 III. MR. HILL WAS DENIED A FAIR TRIAL, DUE PROCESS OF LAW AND EFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO SUBPOENA TWO WITNESSES CRITICAL TO THE APPELLANT'S DEFENSE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
In his First Assignment of Error, appellant contends the trial court erred when it overruled his motion to suppress because the abandonment of property was involuntarily prompted as a result of the unlawful seizure by Officer Peterson. We disagree.
In this assignment of error, appellant does not argue the trial court's findings of fact are against the manifest weight of the evidence. Nor does appellant allege the trial court applied the incorrect law. Appellant instead challenges the trial court's decision as to the ultimate issue raised in the motion to suppress. Under such a challenge, we must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; Statev. Claytor (1993), 85 Ohio App.3d 623, 627; and State v.Guysinger (1993), 86 Ohio App.3d 592, 594. It is based on this standard that we review appellant's First Assignment of Error.
The United States Supreme Court recently addressed a similar issue in the case of Illinois v. Wardlow (2000), ___ U.S. ___, 120 S.Ct. 673, in which the United States Supreme Court held that reasonable suspicion exists that a defendant was involved in criminal activity and justifies a stop when a defendant, unprovoked, flees from officers in an area of heavy narcotics trafficking. Id. at 676-677. In Wardlow, the defendant fled upon seeing a caravan of police vehicles converge on an area of Chicago known for heavy drug trafficking. Id. at 674-675. The officers eventually cornered the defendant, on the street, and conducted a protective pat-down search for weapons. Id. at 675. During the frisk, the officer squeezed a bag the defendant was carrying and felt a heavy, hard object similar to the shape of a gun. Id. The officer opened the bag and discovered a handgun with five live rounds of ammunition. Id.
The officer placed defendant under arrest. Prior to his trial, defendant filed a motion to suppress on the basis that the gun was not recovered during a lawful stop and frisk. Id. The trial court overruled defendant's motion. Id. Following a bench trial, the trial court convicted defendant of unlawful use of a weapon by a felon. Id. On appeal, the Illinois appellate court reversed defendant's conviction, concluding that the gun should have been suppressed because the police officer did not have reasonable suspicion sufficient to justify an investigative stop pursuant to Terry v. Ohio (1968), 392 U.S. 1. The Illinois Supreme Court agreed. Id. In affirming the decision of the court of appeals, the court explained that sudden flight in a high crime area, does not create a reasonable suspicion justifying a Terry stop. Id.
The United States Supreme Court, in addressing the issue of reasonable suspicion, began by noting that a brief encounter between a citizen and a police officer, on a public street, is governed by the analysis contained inTerry v. Ohio, supra. Id. Under Terry, an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Id., citing Terry at 30.
 * * * "[R]easonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. United States v. Sokolow (1989), 490 U.S. 1, 7. The officer must be able to articulate more than an "inchoate and unparticularized suspicion or "hunch" "of criminal activity. Terry at 27, citing Wardlow at 675-676.
In concluding the officers had a reasonable, articulable suspicion to stop the defendant, the United States Supreme Court considered several factors. First, the defendant was in an area known for heavy narcotics trafficking. However, "[an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." Wardlow at 676, citing Brown v. Texas
(1979), 443 U.S. 47. Police officers are not required to ignore the characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Wardlow at 676.
Second, the Court considered the defendant's unprovoked flight upon seeing the officers. Id. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Id., citing United States v. Brignoni-Ponce (1975), 422 U.S. 873, 885; Florida v. Rodriguez (1984),469 U.S. 1, 6; Sokolow, supra, at 8-9. The Court concluded that:
 [i]n reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior. Wardlow at 676.
Based on the Wardlow decision and the testimony of Canton City Police Officer Michael Peterson, we conclude the trial court properly denied appellant's motion to suppress. At the suppression hearing, Officer Peterson testified to the following concerning the Terry stop of appellant. Officer Peterson was dispatched, to the scene, because of a complaint of loud music and arguing. Tr. Suppression Hrng. at 8. The area in question is known for drug activity and its relationship with the Rated R Gang. Id. Upon arriving on the scene, Officer Peterson observed appellant standing in the street. Id. at 11. Officer Peterson had already warned appellant, on several different occasions, not to stand in the street. Id.
When Officer Peterson got out of his cruiser, appellant began walking between to parked vehicles. Id. at 12. Officer Peterson yelled at him "to come here, come back here." Id. at 13. Appellant proceeded to act as if he did not hear Officer Peterson. Id. Officer Peterson testified that when a person acts as if he or she cannot hear, it is an indication that the person is about to run. Id. As Officer Peterson began to approach appellant, appellant ran around the side of the house where he encountered a large dog tied to a dog house and tossed the contents of the plastic bag. Id. at 13-14. When appellant began running, Officer Peterson believed appellant had something to hide. Id. at 25. Officer Peterson also testified that it is common conduct for a person selling drugs to stand in the street. Id. at 17.
As in the Wardlow decision, we conclude appellant's presence, in the street, in a known area for drug trafficking, as well as appellant's flight, gave Officer Peterson a reasonable, articulable suspicion to conduct a Terry pat-down search of appellant. Thus, we find appellant did not involuntarily abandon the property as a result of an unlawful seizure as the detention and pat-down search performed by Officer Peterson was legally permissible and not in violation of Terry. Finally, appellant indicated, to Officer Peterson, that he tossed the contents of the bag so Officer Peterson could not arrest him because he did not have any drugs on his person at the time of the stop. Id.
at 15. Clearly, appellant's conduct of tossing the contents of the plastic bag was not involuntary or the result of the seizure, rather appellant purposely tossed the crack cocaine believing he could not be arrested if it was not found on his person.
Accordingly, appellant's First Assignment of Error is overruled.
 II
Appellant contends, in his Second Assignment of Error, that he was denied his rights to due process of law, a fair trial and effective assistance of counsel when the trial court refused to grant an overnight continuance in order to secure the attendance of two witnesses critical to his defense. We disagree.
The trial court enjoys broad discretion in granting or denying a motion for continuance to secure the attendance of a witness. State v. Unger (1981), 67 Ohio St.2d 65, paragraph one of the syllabus. An abuse of discretion occurs only where the trial court's attitude is unreasonable, arbitrary or unconscionable, it connotes more than an error of law or judgment. Id. at paragraph one of the syllabus.
In Ungar v. Sarafite (1964), 376 U.S. 575, 589, the United States Supreme Court stated that:
 [t]here are not mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Id. at 589.
Thus, the standard is a balancing test which requires the trial court to consider the following competing factors:
 * * * the length of delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors depending on the unique facts of each case. Unger at 67-68.
In the case sub judice, appellant requested an overnight continuance to secure the presence of Canton City Police Officers Lester Marino and Nick Mercorelli. During appellant's first trial, Officers Marino and Mercorelli both testified as witnesses for the state. However, at his second trial, the state decided not to call Officers Marino and Mercorelli. Defense counsel did not know that the state did not intend to call these two officers and informed the jury, during his opening statement, that they would hear the testimony of three police officers who would present different versions of what happened the night appellant was arrested.
As soon as defense counsel learned that the state did not intend to call Officers Marino or Mercorelli, he moved for a continuance on the ground that he did not subpoena these two witnesses prior to trial. Defense counsel wished to present the differing testimony surrounding the nature of the dispatch, the location where appellant stopped in response to Officer Peterson's show of authority, and the different amounts of crack cocaine observed by the officers. The trial court overruled appellant's request for a continuance and stated:
I will cut to the quick here, okay? I have been a — both parties have been through a suppression hearing, a prior trial, and now this is the second trial of this matter. I think we are all very well aware of what the facts are in this case.
It occurs to the Court that the two other police officers who testified in the prior case testified that they did not see the Defendant throw the crack cocaine onto the ground because they were not present at the time when this incident occurred. They weren't in the vicinity at the time the event supposedly took place. Tr. May 27, 1999, at 199.
Based on the above case law, we find the trial court did not abuse its discretion when it overruled appellant's motion for a continuance. At appellant's first trial, Officer Marino testified that he heard Officer Peterson yell that appellant was running south. Tr. May 12, 1999, at 154. Officer Marino and his K-9 went around the other side of the house to cut off appellant. Id. Officer Marino did not see appellant toss the crack cocaine. Id. at 155. Officer Marino saw Officer Peterson handcuffing appellant.Id. Officer Peterson pointed out, to Officer Marino, a piece of crack cocaine on the ground. Id.
Officer Mercorelli testified, at appellant's first trial, that he did not notice loud music. Id. at 174. He heard Officer Peterson yell some instructions, to appellant, and watched appellant move away from Officer Peterson, to the side of the house. Id. at 173. Officer Mercorelli did not see appellant start to run because he was more focused on the people on the porch and wanted to provide cover and protection for Officer Peterson. Id. at 168.
Clearly, the testimony of Officers Marino and Mercorelli would not have assisted the jury in determining whether appellant was guilty of possession of cocaine. Neither officer observed appellant toss the crack cocaine. Both officers were engaged in other tasks as Officer Peterson pursued appellant. The fact that Officer Mercorelli did not remember hearing loud music has no bearing on this matter because upon the officers' arrival on the scene, the officers observed appellant violating a Canton City Ordinance by standing in the middle of the street.
Appellant's Second Assignment of Error is overruled.
 III
In his Third Assignment of Error, appellant contends he was denied effective assistance of counsel because defense counsel failed to subpoena Officers Marino and Mercorelli. We disagree.
The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington (1984), 466 U.S. 668. Ohio adopted this standard in the case of State v. Bradley (1989), 42 Ohio St.3d 136. These cases require a two-prong analysis in reviewing a claim for ineffective assistance of counsel.
First, we must determine whether counsel's assistance was ineffective. Whether counsel's performance fell below an objective standard of reasonable representation and violative of any of his essential duties to the client. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. (Id. at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. State v. Carter (1995),72 Ohio St.3d 545, 558, citing Lockhart v. Fretwell (1993), 506 U.S. 364.
Having determined, in appellant's Second Assignment of Error, that the trial court did not abuse its discretion when it overruled appellant's request for a continuance in order to subpoena Officers Marino and Mercorelli, we conclude appellant did not receive ineffective assistance of counsel. Defense counsel's failure to subpoena these witnesses did not violate any of his essential duties owed to appellant. We will not address the second prong of the Strickland test.
Appellant's Third Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
 ______________________________ Wise, J.
Gwin, P. J., and Edwards, J., concur.