UNITED STATES of America, Plaintiff–Appellee,

v.

Arnold Bernard KITCHEN, aka Sealed 1, Defendant–Appellant.

No. 00–30121.
D.C. No. CR–99–05516–FDB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2001.

Decided April 4, 2001.

Rymer, Circuit Judge, filed a dissenting opinion.

Before RYMER, THOMAS, and MCKEOWN, Circuit Judges.

MEMORANDUM *

Defendant Arnold Kitchen appeals the district court's denial of his motion to suppress evidence. He also challenges the constitutionality of his sentence under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We review denial of Kitchen's motion to suppress de novo, *see United States v. Wright*, 215 F.3d 1020, 1025 (9th Cir.), *cert. denied*, — U.S. ——, 121 S.Ct. 406, 148 L.Ed.2d 313 (2000), and we reverse.

■ Kitchen argues that the officers, when they first approached him, unlawfully stopped him because they lacked reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We agree. "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *United States v. Montero–Camargo*, 208 F.3d 1122, 1129 (9th Cir.) (en banc), *cert. denied*, — U.S. ——, 121 S.Ct. 211, 148 L.Ed.2d 148 (2000). Presence in a high-crime area, by itself, is not enough to create reasonable suspicion. *Id.* at 1138. It is, however, a permissible consideration when determining whether reasonable suspicion exists. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation.").

■ On the night in question, the officers were patrolling a high-crime neighborhood. The officers pulled their patrol

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

car into the parking lot of a gas station/deli in the neighborhood and observed Kitchen and another man in the parking lot make hand-to-hand contact. They did not see whether the two men exchanged anything. When Kitchen and the other man saw the patrol car, they turned away from each other, placing their hands in their pockets, and walked away in separate directions.

At the time, the gas station/deli was open, and Kitchen was carrying a bag from the deli. As Kitchen walked away, he did so at a normal pace, but he looked over his shoulder in the direction of the officers a couple of times. The officers then stopped and questioned Kitchen about the transaction in the parking lot, which they believed to be a drug transaction. The officers testified, however, that they had *never* seen a hand-to-hand drug transaction in any context, nor was the gas station/deli known as a drug trafficking location. Kitchen claimed that the transaction in the parking lot was a mere innocent exchange: the other man had asked him for a quarter as Kitchen was leaving the deli, and Kitchen gave him one.

Under these circumstances, a finding of reasonable suspicion inculpates too much innocent behavior. *See Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (holding that officers did not have reasonable suspicion for an investigatory stop when they detained two men who were walking away from each other in an alley in an area known for drug trafficking because "the ... activity was no different from the activity of other pedestrians in that neighborhood"); *Montero–Camargo*, 208 F.3d at 1139 (noting that "the likelihood of an innocent explanation for the defendants' presence and actions is far less than if the stop took place in a residential or business area"). The evidence here is consistent with the conclusion that one man asked another man, who was leaving a store, bag in hand, for money. The

customer gave the other man a quarter, and the two parted ways. This exchange is not uncommon in convenience store parking lots, even in high-crime areas (perhaps more so). Nothing the officers saw justified their suspicion that the activity was illicit rather than innocent; they had nothing more than an "inarticulate hunch[ ]." *Terry*, 392 U.S. at 22, 88 S.Ct. 1868. Thus, the officers did not have reasonable suspicion to justify a seizure of Kitchen.

■ Kitchen, however, consented to the initial stop and frisk. During the frisk, Kitchen implicitly revoked his consent by leaving. Because the officers did not have reasonable suspicion at that time, Kitchen was under no obligation to cooperate with them. *See Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) ("[A]n individual may decline an officer's request [to cooperate] without fearing prosecution."). His subsequent flight, however, justified a *Terry* stop. *See Wardlow*, 528 U.S. at 125, 120 S.Ct. 673 ("[U]nprovoked flight is simply not a mere refusal to cooperate.... Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put...."). But the officers did *not* conduct a mere investigatory detention; rather, they immediately handcuffed Kitchen, told him that he was under arrest, and advised him of his *Miranda* rights. At that time, the officers did not have probable cause for Kitchen's arrest. *See Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir.1996) ("Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused *had committed or was committing an offense.*") (internal quotation marks and citation omitted) (emphasis added).

Without probable cause, the subsequent search of Kitchen was unlawful, and the fruits thereof should have been suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Because we reverse the district court on this ground, we need not address Kitchen's *Apprendi* argument.

REVERSED.

RYMER, Circuit Judge, dissenting.

RYMER, Circuit Judge.

I see this differently, because once Kitchen fled, the deputies knew that there had been some kind of hand-to-hand exchange in the parking lot of a convenience store around 11:00 p.m. (which they thought could be a drug deal), that each participant had put his hand in his pocket, and that, having seen the marked patrol car pulling into the lot, the two did an about face and went in different directions. Kitchen walked away at a normal pace, but looked back several times and that seemed unusual. More importantly, the deputies knew that Kitchen had been willing to talk and to let them pat him down—but, when they approached his pocket, he tried to run. Added to their knowledge of violence as well as drugs in the area, they were entitled to stop Kitchen at this point and for their own safety, handcuff him and complete their search as well as conduct a reasonable inquiry commensurate with a *Terry* stop.[1] That the officers also Mirandized Kitchen and arrested him on obstruction charges is irrelevant to admissibility of the gun. The deputies could validly detain Kitchen for investigatory purposes and for that purpose he was not free to leave anyway. While it would certainly matter whether the obstruction arrest was with probable cause if the search had been

incident to *it,* the investigation that produced the gun was precipitated by Kitchen's flight. *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). I would, therefore, affirm.

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).