# CIRCUIT COURT OF ARLINGTON COUNTY

Commonwealth of Virginia

v.

Ricardo Juan Trino

February 22, 2006

Case Nos. CR05-1136, CR05-1137,
CR05-1138, CR05-1139

BY JUDGE JAMES F. ALMAND

This case presents the question of whether Officer Crowder had a reasonable and articulable suspicion that the Defendant was subject to an investigative stop. The defense also contends that there was no probable cause for arrest and that the preliminary breath test administered at the scene is inadmissible. For the reasons set forth below, the Court holds that the Defendant's Motion to Suppress is denied.

## *Facts*

This case arises from an incident that occurred at Reagan National Airport on July 26, 2005. Officer Freddie Crowder of the Metropolitan Washington Airport Authority was on duty in his police car on the Arrival Ramp when he was approached by an airport Patron. The Patron was driving a black Ford Expedition and complained of a driver who had cut him off on more than one occasion in the vicinity. He then went on to describe the man as a Hispanic male wearing a yellow shirt and the car as a white or silver Honda or Toyota with a Virginia license plate that began with the letters "JUY." Officer Crowder did not obtain any identification from the Patron.

238

Approximately five to ten minutes later, Officer Crowder saw a car and driver matching the description he had just received as it passed him and moved in front of the Arrival doors. He activated his emergency equipment behind the Defendant's vehicle, causing him to stop, then the Defendant quickly moved forward and finally stopped again only after Officer Crowder activated his siren.

Officer Crowder approached the Defendant, requesting his license and registration. The officer immediately smelled an odor of alcohol, noticed that the Defendant had bloodshot, glassy eyes, and observed that he had slurred speech. The Defendant said he did not have a driver's license but wrote down his identifying information for the officer. Officer Crowder then asked if his privilege to drive was suspended to which the Defendant answered in the affirmative. The Patron who made the initial report returned and spoke briefly with Officer Crowder while he confirmed the Defendant's identity and record.

Officer Crowder returned to the Defendant's vehicle after confirming that his license had in fact been suspended. When asked if he had been drinking, the Defendant first said that he had not and then said that he had consumed a few beers earlier in the day. He also told the officer that he was revoked for a "DUI" arrest and had two prior convictions related to driving while under the influence. The Defendant then consented to taking field sobriety tests and confirmed that he was of sound mind and physical condition to attempt the simple tests.

The Defendant faltered at various points during the tests and failed to fully comply with the instructions of the tests though he had assured the officer that he understood the instructions. After the field tests, Officer Crowder asked the Defendant if he would consent to a preliminary breath test ("PBT") and told him that it could not be used against him as evidence of his guilt in court. The Defendant initially refused, at which point the officer told him that he would be placed under arrest for Driving While Intoxicated. After hearing this, the Defendant consented to the PBT which indicated a BAC of .11. Officer Crowder arrested the Defendant for Driving While Intoxicated. As a result of these incidents, the Commonwealth has brought four charges against the Defendant.

## Discussion

The Defendant's Motion to Suppress raises three issues. The first is whether Officer Crowder had an articulable and reasonable suspicion that the Defendant was engaged in criminal activity or was otherwise subject to seizure

at the time he stopped the Defendant. The second is whether there was sufficient evidence of the Defendant's intoxication to amount to probable cause. The third is whether the preliminary breath test administered at the scene is admissible.

The Court holds that Officer Crowder did have an articulable and reasonable suspicion that the Defendant was engaged in criminal activity or was otherwise subject to seizure at the time he stopped the Defendant. The impetus for the stop in this case was not based on random and unfettered abuse of police discretion. Officer Crowder merely performed the duties of a police officer. A concerned citizen made a report of dangerous activity on a high-volume, public road at the airport. Officer Crowder observed the nature and candor of the informant and the quality of the information being reported. Minutes later the officer saw the vehicle and driver that reportedly posed a threat to the safety of the roadways and citizens he was charged to protect and stopped the car to investigate the danger.

The Defendant is correct that a traffic stop where police detain a driver, even for a brief period and limited purpose, constitutes a "seizure," triggering certain protections under the Fourth Amendment. When such a stop occurs, an officer must merely "have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity" *Whitfield v. Commonwealth*, 265 Va. 358, 361, 576 S.E.2d 463, 465 (2003) (citing *Brown v. Texas*, 443 U.S. 47, 51 (1979)), before he can briefly detain a suspect for questioning. In order to justify whether a stop is warranted, a court must look at the "totality of the circumstances." *Whitfield*, 265 Va. at 361, 576 S.E.2d at 465. The defense points out that Officer Crowder did not physically see the Defendant violate the law before pulling him over; rather he matched him to the description he had just been given. The law does not require such a direct observation. In fact, even an anonymous tip with corroboration has been held to justify an investigatory stop. The court must balance the "quantity and quality" of the information the officer uses to make the decision. *Alabama v. White*, 496 U.S. 325, 330 (1990).

When considered as a whole, the circumstances of this case demonstrate that there were sufficient objective facts to form the basis of a reasonable suspicion of criminal activity. This conclusion is bolstered in light of the controlling law and substantially similar fact pattern of the case of *Giles v. Commonwealth*. 32 Va. App. 519, 529 S.E.2d 327 (2000). In that case, an officer received a report from two women who stated that they had just heard a man who claimed to have a gun make threatening statements in the vicinity. The women identified the man's vehicle to the officer who then stopped him

240

and subsequently found probable cause to make an arrest for "operating a motor vehicle while under the influence of alcohol." *Giles*, 32 Va. App. at 522, 529 S.E.2d at 329. The court upheld the conviction and found that the report of the two women was corroborated by the circumstances, and, therefore, a sound basis for a reasonable and articulable suspicion of criminal activity.

In the present matter, the defense contends that Officer Crowder acted solely on the basis of an "anonymous tipster."[1] However, the Patron in this case was not anonymous. In *Giles*, the Virginia Court of Appeals held that, although the arresting officer did not obtain the names or addresses of two women making simultaneous reports, the reports were not anonymous tips because the officer "stood face to face with them and listened to their accounts" and "was able to assess their credibility and the reliability of their information." *Giles*, 32 Va. App. at 524, 529 S.E.2d at 329. The officer in this case had the opportunity to make the same face to face observations as those made in *Giles*. Officer Crowder testified to his training and experience in evaluating individuals and that the demeanor of the Patron was consistent with someone who had experienced the events he described. While the officer here failed to record the Patron's identifying information, as in *Giles*, he was able to observe the demeanor of the informant, which in turn allowed him to establish the veracity of the report. That is far more than an anonymous tip of the kind envisioned in the line of Supreme Court cases cited by the defense. *See generally Florida v. J.L.*, 529 U.S. 266 (2000); *Alabama v. White*, 496 U.S. 325 (1990).

In addition to Officer Crowder's observation of the Patron, there was other evidence corroborating the report and warranting his reasonable suspicion of criminal activity. First of all, there was the content of the report. As the Commonwealth points out, the Patron gave six specific identifying features to Officer Crowder that he matched with the Defendant: his physical appearance, his clothing, the color of his car, the approximate model of his car, the type of license plate, and the first three letters on the license plate. Furthermore, the Defendant in this case did not stop immediately when the officer turned on his lights. He stopped initially and then started again, only coming to a final stop after the officer used his siren. The court in *Giles* found

---

[1] It is important to note that Officer Crowder's recollection of the Patron's statement was not admitted for the truth of what the Patron said. Rather, it was admitted to prove that the Officer was indeed given the report in question by the Patron.

similar facts to be corroborative of the officer's reasonably held suspicion of criminal activity. *Giles*, 32 Va. App. at 525, 529 S.E.2d at 330.

The Court also finds that the nature of the behavior described in the report warranted a reasonable suspicion of criminal activity. A common element of the reported behavior in this case and in *Giles* is that it was serious enough to the witnesses to cause them to take the time to find a police officer and make a report. However, in *Giles*, the offending behavior reported to the officer was merely a statement the two women had heard from a man who said that "he had a gun and was 'looking to hurt someone' " before they saw him enter his car. *Giles*, 32 Va. App. at 522, 529 S.E.2d at 329. Neither of the two women reported that they had actually even seen a gun, yet the court held that the nature of the reports "suggested the imminence of serious and perhaps lethal danger" requiring the officer "to act quickly and without hesitation" before the defendant left the scene. *Giles*, 32 Va. App. at 524, 529 S.E.2d at 330. There was a suggested threat of imminent harm to public safety in this case as well. There was a heavy volume of traffic in the Arrivals area with many passengers loading luggage and getting into cars. When compared to the facts of *Giles*, the Patron's statement in this case was persuasive that actual criminal conduct had occurred twice and was likely to occur again.

The "quantity and quality" of the information given by the reporters in *Giles* was consistent with that of the information given by the Patron here. The officers in both cases had similar opportunities to use their extensive training and experience to evaluate the reporters as they received the information. The reported behavior in both cases was similar in its potential to harm the public and the imminence of its threat. This case is not sufficiently distinguishable from *Giles* to warrant suppression of the evidence. Officer Crowder would have been derelict in performing his duty if he did not further investigate the Defendant's actions once he saw the car and person previously described to him as having twice cut off the reporting Patron at the airport.

The Court finds that there was sufficient probable cause for Officer Crowder to make an arrest in this case. Officer Crowder's decision to make the arrest was based not only upon the Patron's report, but the officer's entire encounter with the Defendant. This began when the Defendant failed to remain stopped after the officer activated his emergency equipment. It included the officer's observations of the Defendant's odor of alcohol, his bloodshot and glassy eyes, and his slurred speech. There was also the Defendant's poor performance on the field sobriety tests, his PBT result of .11, the fact that at a minimum, Officer Crowder had confirmed that the

Defendant was caught driving with a suspended license, and the Defendant's admission of previous DUI convictions.

At the Motion Hearing on December 20, 2005, the Court ruled that there was a sufficient foundation to demonstrate that the device was functioning properly and that the results of the PBT could reasonably be used in determining there was probable cause that the Defendant had been driving while intoxicated. However, the point is moot as this Court finds that Officer Crowder had sufficient probable cause to make the arrest even without the results of the PBT[2] based upon the odor of alcohol and glassy eyes of the Defendant, his failure to properly perform the field sobriety tests, and his admission that his license was suspended based on DUI convictions.

For the foregoing reasons, the Court holds that the Defendant's Motion to Suppress is denied.

---

[2] The Defendant initially refused to take the PBT, and Officer Crowder was prepared to arrest the Defendant at that time, even without the PBT results.