# BROWN v. TEXAS

No. 77–6673.  Argued February 21, 1979—Decided June 25, 1979

BURGER, C. J., delivered the opinion for a unanimous Court.

*Raymond C. Caballero* argued the cause and filed a brief for appellant.

*Renea Hicks,* Assistant Attorney General of Texas, argued the cause for appellee *pro hac vice.* With him on the brief were *Mark White,* Attorney General, *John W. Fainter, Jr.,* First Assistant Attorney General, and *Ted L. Hartley,* Executive Assistant Attorney General.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

This appeal presents the question whether appellant was validly convicted for refusing to comply with a policeman's demand that he identify himself pursuant to a provision of the Texas Penal Code which makes it a crime to refuse such identification on request.

I

At 12:45 in the afternoon of December 9, 1977, Officers Venegas and Sotelo of the El Paso Police Department were cruising in a patrol car. They observed appellant and another man walking in opposite directions away from one another in an alley. Although the two men were a few feet apart when they first were seen, Officer Venegas later testified that both officers believed the two had been together or were about to meet until the patrol car appeared.

The car entered the alley, and Officer Venegas got out and asked appellant to identify himself and explain what he was

---

*Evelle J. Younger,* Attorney General, *Jack R. Winkler,* Chief Assistant Attorney General, *Daniel J. Kremer,* Assistant Attorney General, and *Karl Phaler,* Deputy Attorney General, filed a brief for the State of California as *amicus curiae.*

doing there. The other man was not questioned or detained. The officer testified that he stopped appellant because the situation "looked suspicious and we had never seen that subject in that area before." The area of El Paso where appellant was stopped has a high incidence of drug traffic. However, the officers did not claim to suspect appellant of any specific misconduct, nor did they have any reason to believe that he was armed.

Appellant refused to identify himself and angrily asserted that the officers had no right to stop him. Officer Venegas replied that he was in a "high drug problem area"; Officer Sotelo then "frisked" appellant, but found nothing.

When appellant continued to refuse to identify himself, he was arrested for violation of Tex. Penal Code Ann., Tit. 8, § 38.02 (a) (1974), which makes it a criminal act for a person to refuse to give his name and address to an officer "who has lawfully stopped him and requested the information." [1] Following the arrest the officers searched appellant; nothing untoward was found.

While being taken to the El Paso County Jail appellant identified himself. Nonetheless, he was held in custody and charged with violating § 38.02 (a). When he was booked he was routinely searched a third time. Appellant was convicted in the El Paso Municipal Court and fined $20 plus court costs for violation of § 38.02. He then exercised his right under Texas law to a trial *de novo* in the El Paso County Court. There, he moved to set aside the information on the ground that § 38.02 (a) of the Texas Penal Code violated the First, Fourth, and Fifth Amendments and was unconstitutionally vague in violation of the Fourteenth Amendment. The

---

[1] The entire section reads as follows:

"§ 38.02. Failure to Identify as Witness

"(a) A person commits an offense if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information."

motion was denied. Appellant waived a jury, and the court convicted him and imposed a fine of $45 plus court costs.

Under Texas law an appeal from an inferior court to a county court is subject to further review only if a fine exceeding $100 is imposed. Tex. Code Crim. Proc. Ann., Art. 4.03 (Vernon 1977). Accordingly, the County Court's rejection of appellant's constitutional claims was a decision "by the highest court of a State in which a decision could be had." 28 U. S. C. § 1257 (2). On appeal here we noted probable jurisdiction. 439 U. S. 909 (1978). We reverse.

## II

When the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment. In convicting appellant, the County Court necessarily found as a matter of fact that the officers "lawfully stopped" appellant. See Tex. Penal Code Ann., Tit. 8, § 38.02 (1974). The Fourth Amendment, of course, "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. *Davis* v. *Mississippi,* 394 U. S. 721 (1969); *Terry* v. *Ohio,* 392 U. S. 1, 16–19 (1968). '[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person,' *id.,* at 16, and the Fourth Amendment requires that the seizure be 'reasonable.' " *United States* v. *Brignoni-Ponce,* 422 U. S. 873, 878 (1975).

The reasonableness of seizures that are less intrusive than a traditional arrest, see *Dunaway* v. *New York,* 442 U. S. 200, 209–210 (1979); *Terry* v. *Ohio,* 392 U. S. 1, 20 (1968), depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania* v. *Mimms,* 434 U. S. 106, 109 (1977); *United States* v. *Brignoni-Ponce, supra,* at 878. Consideration of the constitutionality of such seizures involves a

weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. See, *e. g.*, 422 U. S., at 878–883.

A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. See *Delaware* v. *Prouse,* 440 U. S. 648, 654–655 (1979); *United States* v. *Brignoni-Ponce, supra,* at 882. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. *Delaware* v. *Prouse, supra,* at 663. See *United States* v. *Martinez-Fuerte,* 428 U. S. 543, 558–562 (1976).

The State does not contend that appellant was stopped pursuant to a practice embodying neutral criteria, but rather maintains that the officers were justified in stopping appellant because they had a "reasonable, articulable suspicion that a crime had just been, was being, or was about to be committed." We have recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have "probable cause" to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. *United States* v. *Brignoni-Ponce, supra,* at 880–881. See *Terry* v. *Ohio, supra,* at 25–26. However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Delaware* v. *Prouse, supra,* at 663; *United States* v. *Brignoni-Ponce, supra,* at 882–883; see also *Lanzetta* v. *New Jersey,* 306 U. S. 451 (1939),

The flaw in the State's case is that none of the circum-

stances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley "looked suspicious," but he was unable to point to any facts supporting that conclusion.[2] There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference. The Texas statute under which appellant was stopped and required to identify himself is designed to advance a weighty social objective in large metropolitan centers: prevention of crime. But even assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it. When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits. See *Delaware* v. *Prouse, supra,* at 661.

---

[2] This situation is to be distinguished from the observations of a trained, experienced police officer who is able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer. See *United States* v. *Brignoni-Ponce,* 422 U. S. 873, 884–885 (1975); *Christensen* v. *United States,* 104 U. S. App. D. C. 35, 36, 259 F. 2d 192, 193 (1958).

The application of Tex. Penal Code Ann., Tit. 8, § 38.02 (1974), to detain appellant and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct.[3] Accordingly, appellant may not be punished for refusing to identify himself, and the conviction is

*Reversed.*

## APPENDIX TO OPINION OF THE COURT

"THE COURT: . . . What do you think about if you stop a person lawfully, and then if he doesn't want to talk to you, you put him in jail for committing a crime.

"MR. PATTON [Prosecutor]: Well first of all, I would question the Defendant's statement in his motion that the First Amendment gives an individual the right to silence.

"THE COURT: . . . I'm asking you why should the State put you in jail because you don't want to say anything.

"MR. PATTON: Well, I think there's certain interests that have to be viewed.

"THE COURT: Okay, I'd like you to tell me what those are.

"MR. PATTON: Well, the Governmental interest to maintain the safety and security of the society and the citizens to live in the society, and there are certainly strong Governmental interests in that direction and because of that, these interests outweigh the interests of an individual for a certain amount of intrusion upon his personal liberty. I think these Governmental interests outweigh the individual's interests in

---

[3] We need not decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements. See *Dunaway* v. *New York*, 442 U. S. 200, 210 n. 12 (1979); *Terry* v. *Ohio*, 392 U. S. 1, 34 (1968) (WHITE, J., concurring). The County Court Judge who convicted appellant was troubled by this question, as shown by the colloquy set out in the Appendix to this opinion.

this respect, as far as simply asking an individual for his name and address under the proper circumstances.

"THE COURT: But why should it be a crime to not answer?

"MR. PATTON: Again, I can only contend that if an answer is not given, it tends to disrupt.

"THE COURT: What does it disrupt?

"MR. PATTON: I think it tends to disrupt the goal of this society to maintain security over its citizens to make sure they are secure in their gains and their homes.

"THE COURT: How does that secure anybody by forcing them, under penalty of being prosecuted, to giving their name and address, even though they are lawfully stopped?

"MR. PATTON: Well I, you know, under the circumstances in which some individuals would be lawfully stopped, it's presumed that perhaps this individual is up to something, and the officer is doing his duty simply to find out the individual's name and address, and to determine what exactly is going on.

"THE COURT: I'm not questioning, I'm not asking whether the officer shouldn't ask questions. I'm sure they should ask everything they possibly could find out. *What I'm asking is what's the State's interest in putting a man in jail because he doesn't want to answer something.* I realize lots of times an officer will give a defendant a Miranda warning which means a defendant doesn't have to make a statement. Lots of defendants go ahead and confess, which is fine if they want to do that. But if they don't confess, you can't put them in jail, can you, for refusing to confess to a crime?" App. 15–17 (emphasis added).