Mollen, P. J., Cohalan, O'Connor and Weinstein, JJ., concur.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EUSTAGUAIO LOSADO, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, dated February 7, 1979, which, after a hearing, granted defendant's motion to suppress physical evidence and statements obtained from the defendant at the time of his arrest. Order reversed, on the law and the facts, motion to suppress denied, and matter remitted to Criminal Term for further proceedings consistent herewith. The defendant was charged with the crimes, among others, of burglary in the third degree and criminal possession of stolen property in the third degree. He moved to suppress physical evidence and inculpatory statements. Following a hearing, the motion to suppress was granted. The question presented on appeal is whether the initial stop of the defendant by the police met Fourth Amendment standards, and if so, whether there was then additional information obtained to permit a finding that probable cause existed to make an arrest. The sole witness at the suppression hearing was Police Officer Nicholas Trigliano. He testified that on the evening of November 29, 1977 he and a partner were doing anticrime, plainclothes duty in an unmarked radio motor patrol car on the four to midnight shift. The two officers had been told by their superiors to give special attention to 263 Classon Avenue because there had been numerous burglaries there. The building was a six-story "jewelry box factory" with other businesses (factories) throughout the building. It occupies about a half block. Five previous arrests had been made in the vicinity; Officer Trigliano had himself made three of them. At about 5:30 P.M., a half hour after it closed, he checked the factory. All the lights were off; the windows and doors were secure. He returned about 9:30 P.M. and saw two males coming down the short flight of stairs of the building carrying some packages. The officer drew alongside the men and stopped them about 25 feet from the stairs. He asked them what they had under their arms. When he got close to them, he saw—in plain view—a gold emblem on one of the packages. That emblem identified "a heritage collection" made at the jewelry box factory. He asked the man holding that package (who was not the defendant) how he had gotten into the building. The man's response was that he went in through the back entrance. Officer Trigiliano went with the man to check the rear entrance. The second officer transported defendant in the unmarked car around the corner to the rear of the building. When Officer Trigliano ascertained that the rear door was locked and that everything was secure, the two men were arrested and taken to the police station. The circumstances justified a reasonable suspicion that defendant was involved in criminal conduct and the initial stop was within Fourth Amendment standards (see *Terry v Ohio,* 392 US 1; CPL 140.50; cf. *Dunaway v New York,* 442 US 200; *Brown v Texas,* 443 US 47). The unlighted building, which had been locked for four hours, was located in a burglary-prone area. Two men descending the building stairway with packages in their arms were reasonably suspected of being involved in criminal activity and could legitimately be asked what they were doing there. When the officer got closer to the stopped men, he noticed that one of the packages they carried bore an emblem used by a manufacturer located in the building. This prompted his question of how the men got into the building; the response was "through the back". A brief, prompt check of the back entrance showed it to be secure. The men were, thereupon, arrested.

The arrest was grounded on probable cause (see *Brinegar v United States,* 338 US 160, 175-176). It was reasonable to believe at that point that the material the men held in their arms, some of which was known by the police officer to have come from the jewelry box factory, had been stolen from the factory. Hopkins, J. P., Damiani, Gulotta and O'Connor, JJ., concur.