■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND MURRIEL, Also Known as CHARLES BRENNAN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Westchester County, rendered July 7, 1978, convicting him of burglary in the third degree, criminal mischief in the fourth degree, possession of burglar's tools, petit larceny, and criminal possession of stolen property in the third degree, upon his plea of guilty, and imposing sentence. Judgment affirmed. On October 20, 1977, at 1:25 P.M., Investigator Fraioli, an eight-year veteran of the Westchester County Sheriff's office, was driving along Reservoir Road at a slow rate of speed. As he passed the Di Somma house located at 50 Reservoir Road, which was approximately one quarter of a mile from where he had lived for 12 years, he observed a black man wearing a black cap, black leather coat, dark pants, and white sneakers exit the front door of the house, leaving the front door ajar. The man exited the house smiling, and without carrying anything or evidencing any unusual bulges. Fraioli had seen black males in the area on other occasions and the fact that a black male was present was not, of itself, suspicious. Fraioli's suspicions were aroused, however, when the suspect closed the screen door behind him and nobody was observed letting him out of the house. Fraioli knew a white family lived in the house, as he had passed it many times and had observed the people who lived there. Also, no cars were present in the driveway or within 300 yards of the house. As he continued to drive along the road, he observed a second black male about 200 feet away, in a second portion of the semicircular driveway. Fraioli proceeded to a telephone, called the North Castle Police Department, and described what he had seen. He further suggested a car be sent to check out the situation. Patrolman Herbst responded to the ensuing radio call to check out two suspicious black males. Herbst, as the receiver of the radio run, not only possessed the information passed on by Fraioli *(People v Lypka,* 36 NY2d 210), but also knew that the Di Somma house had been burglarized numerous times. The house even received special attention during patrols. When Herbst arrived at the scene, he saw the man with the black cap and black leather jacket proceeding down Reservoir Road to the nearby North White Plains shopping center. He stopped the suspect and

---

asked him for his name, address, and where he was coming from. In response defendant told Herbst he was Raymond Pearson of 150 Lake Street, White Plains, but he was unable to produce any identification. After several radio checks failed to verify whether defendant was who he claimed to be, defendant reidentified himself as Charles Brennan of 50 Lake Street. Again this identity could not be verified. Defendant also stated at different points that he was coming from Westchester Community College in Grasslands, and from a nearby house where he had gone to get a tool to repair a car which was not working. Defendant suggested he might have some identification in his car, which was parked in the shopping center, approximately 400 yards from the Di Somma house. Herbst and defendant proceeded to the car, but no identification was produced. Defendant's companion, John Franklin, who was working under the hood of the car, claimed the car belonged to his brother, Robert Franklin, in whose name the car was registered. John, however, was unable to produce a valid driver's license. He also told Herbst that he was coming from Poughkeepsie. At some point after the parties arrived at the car, Investigator Fraioli returned and joined the group. Defendant and his companion Franklin continually alternated between the driver's seat and the front end of the car in an effort to get it started. The suspects were never able to adequately identify themselves, and eventually Fraioli and Herbst became wary of the "shuffling" behavior of the suspects. The suspects were seen making unusual motions with their hands in the car. It seemed to Fraioli that defendant took something from his pocket and tossed in under the seat. At this point, Herbst and Fraioli, both in fear of their safety, removed both suspects from the car and Fraioli observed jewelry and a screwdriver with a broken tip protruding from under the front seat. Both suspects were frisked and handcuffed. The police subsequently determined that the Di Somma house had been burglarized. The police conduct here was not only proper, but demonstrated a high degree of skill, awareness, and sharply honed instinct in a difficult situation. When Herbst stopped defendant and asked for identification, he was not acting on a bare suspicion founded on a mere impression that defendant did not belong in the neighborhood (People v Hodges, 55 AD2d 684). Rather, he possessed a reasonable suspicion that defendant had committed or was committing a crime (Brown v Texas, 443 US 47; People v De Bour, 40 NY2d 210; CPL 140.50). He possessed the knowledge that the man who was being stopped for identification purposes had been seen leaving a house that had been receiving special attention as the site of prior burglaries; that the man did not live in the house; that the occupants of the house had not seen this stranger to the door; that the absence of any vehicles within 300 yards of the house was some indication that the suspect was not your conventional serviceman or salesman, and that the house may be otherwise unoccupied; and that a second man appeared to be waiting for the suspect out of the immediate range of vision of the front of the house. The totality of these circumstances justified the police in their simple request for some showing of identification. To hold otherwise would be to unrealistically hinder the police in the conscientious performance of their duties. Certainly, the innocent citizen must be shielded from an unwarranted interference with his liberty, but this shield cannot serve to protect those who rouse a reasonable suspicion that they are involved in criminal activity. The inconsistent responses of the suspects to the queries presented, and the ambiguous activities observed justified the request that they exit the car. The subsequent observation of the jewelry and screwdriver in plain view generated probable cause for the arrests. Defendant's other contention is without

merit. Accordingly, the judgment of conviction is affirmed. Rabin, J. P., Gulotta, Cohalan and O'Connor, JJ., concur.