884 P.2d 1218 (1994)
Darrel Bradley GEOPFERT, Appellant,
v.
STATE of Oklahoma, ex rel., DEPARTMENT OF PUBLIC SAFETY, Appellee.
No. 84086.
Court of Appeals of Oklahoma, Division 1.
October 4, 1994.
Joel W. Barr, Norman, for appellant.
Michael O'Brien, Oklahoma City, for appellee.
Released for Publication by Order of the Court of Appeals of Oklahoma, Division No. 1.

MEMORANDUM OPINION
HANSEN, Presiding Judge:
Darrel Bradley Geopfert appeals from an order of the trial court upholding revocation of his driving privileges by the Department of Public Safety (DPS) for driving while under the influence of alcohol (DUI). We affirm.
On New Year's Eve, 1992, the Moore Police Department conducted a roadblock in Moore, Oklahoma, for the sole purpose of checking drivers for DUI. At a routine stop, an officer observed evidence of intoxication in Geopfert. The officer asked him to pull over and at that time he was given a field sobriety test. The officer arrested Geopfert for DUI and he was taken to the Moore Police Department where he was given a breath test for blood alcohol. It measured .13, over the limit of .1 for legal driving. DPS revoked his driver's license.
After pursuing his administrative remedies, Geopfert filed the present action in district court. Geopfert did not testify at the hearing. Both parties stipulated Geopfert was operating a motor vehicle on the roads of the State of Oklahoma at the time he was stopped at the DUI checkpoint, that he was given a field sobriety test, taken to the police station, given a legal breath test and the result of the test was .13 blood alcohol level. The only issue tried was whether Geopfert was properly stopped and arrested, and whether the DUI roadblock was proper under Oklahoma law.
D.P.S. presented two Moore police officers as witnesses. The arresting officer testified to the circumstances of the roadblock. The supervisor of the roadblock had asked Geopfert to pull to the side because he saw an open container of Bartles & James peach cooler in the car. During the field sobriety test. the officer noted the odor of alcohol. In addition, Geopfert could not pass the test.
The officer stated the Moore Police Department had publicized and planned the roadblock for several weeks. He said the Department had set out guidelines for the roadblock. The officers were told to stop all vehicles and basically have a short conversation with the driver. If the officer saw any *1219 signs of intoxication, anything that might indicate the driver had been drinking, the officer would detain the vehicle. When asked, he estimated the time most cars were stopped to be probably ten to fifteen seconds. The officer estimated the Moore Police Department probably made eight or nine arrests. He thought the Moore newspaper and perhaps the television media had publicized the roadblock prior to its execution. He also said there were signs a tenth or two tenths of a mile on either side of the roadblock indicating a DUI checkpoint ahead. Additionally, the Department had put flares along the center line of the roadway.
The officer indicated that after the initial stop, if he did not notice slurred speech or smell an odor of alcohol or other indication of alcohol in the car, the officer would send the vehicle on its way with a simple greeting.
Another Moore police officer who transported Geopfert to the police station, testified he attended a meeting on how the checkpoint should be conducted. He was at the checkpoint for maybe 45 minutes. During that time he estimated probably 50 vehicles went through the checkpoint. He ran at least eight to ten breath tests resulting from arrests at the checkpoint. He said notice of the checkpoint was published in the Moore American newspaper at least a day or two ahead. He stated he was given no written guidelines at the meeting.
The trial court held the checkpoint to be valid and gave its reasons. It stated that there was no testimony that anyone's stop lasted longer than 30 seconds; the stops were not random; the checkpoint was publicized; the intrusion was minimal; and a "two percent stop rate is not so low as to make the checkpoint ineffective."
Geopfert on appeal points out our Oklahoma Court of Criminal Appeals has held DUI roadblocks to be too close to a police state to be constitutional under the Fourth Amendment to the United States Constitution. In State v. Smith, 674 P.2d 562 (Okla. Cr. 1984), that Court held a temporary DUI roadblock was an unreasonable seizure of the person when done without any articulable facts giving rise to a reasonable suspicion for the stop. It affirmed a lower court's substention of a defendant's motion to suppress any evidence acquired through that stop, holding there was no statutory authority which would support, directly or indirectly, the State's contention it has the power to establish checkpoints to inspect all motorists to discern if any are intoxicated. The Court relied heavily on the rationale in United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). The Supreme Court in Martinez-Fuerte, validated permanent roadblocks at the border for the sole purpose of apprehending illegal aliens, holding that type of checkpoint withstood constitutional scrutiny. The Court of Criminal Appeals held the limited exception for this type stop in Martinez-Fuerte was inapplicable to Oklahoma's temporary DUI roadblocks. The Court stated:
The United States Supreme Court has never stretched its permanent roadblock exception to the point that such an intrusion can be tolerated under the Fourth Amendment. The subjective intrusion, i.e. fear and apprehension, potentially imposed upon the individual innocent of misconduct is simply too great.
State v. Smith, supra, at 564.
However, in 1990, The United States Supreme Court did stretch its permanent roadblock exception to include temporary roadblocks set up for the sole purpose of apprehending persons operating a vehicle while under the influence of alcohol. The sole issue in Michigan Department of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) was whether a State's use of highway sobriety checkpoints violated the Fourth and Fourteenth Amendments to the United States Constitution. The Court, with strong dissents by three justices, held it did not, and reversed the contrary holding of the Michigan Court of Appeals. In that decision the director of the Michigan State Police had appointed a sobriety checkpoint advisory committee to create guidelines setting forth procedures governing checkpoint operations, site selection, and publicity. As in the checkpoint involved here, all vehicles passing through the checkpoint would be stopped and their drivers briefly examined for signs of intoxication. In cases where the checkpoint *1220 officer detected signs of intoxication, the motorist would be directed to a location out of the traffic flow where an officer would check the motorist's driver's license and car registration, and, if warranted, conduct further sobriety tests. Should the field tests and the officer's observations suggest the driver was intoxicated, an arrest would be made. All other drivers would be permitted to resume their journey immediately.
During the 75 minute duration of the sobriety checkpoint's operation at issue in Sitz, the average delay for each vehicle was approximately 25 seconds. Two of the drivers were detained for field sobriety testing and one of the two was arrested for DUI. After the trial of the case in Sitz, at which the court heard extensive testimony concerning the effectiveness of the highway sobriety checkpoint programs, the trial court ruled the Michigan program violated the Fourth Amendment of the United States Constitution as well as a similar provision of the Michigan Constitution. To decide this, the trial court performed a balancing test derived from the United States Supreme Court in Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). On appeal the Court of Appeals agreed and affirmed the trial court. The United States Supreme Court granted a writ of certiorari to review that decision.
Initially, the Supreme Court emphasized that when a vehicle is stopped at a checkpoint, a Fourth Amendment "seizure" occurs, not an "arrest." The question then becomes whether such seizures are "reasonable" under the Fourth Amendment.[1]
In using the balancing test of Brown, the Court pointed out no one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it. The Court quoted statistical data from the U.S. Department of Transportation National Highway Traffic Safety Administration, Fatal Accident Reporting System 1988, that drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage. Conversely, the weight bearing on the other scale  the measure of the intrusion on motorists stopped briefly at sobriety checkpoints  is slight. The Court saw virtually no difference between the levels of intrusion on law-abiding motorists from the brief stops necessary to the effectuation of DUI checkpoints and those for illegal aliens in Martinez-Fuerte. While the Michigan Court of Appeals found the subjective intrusion of the sobriety checkpoints on motorists to be substantial, the Supreme Court felt the Michigan Appellate Court misread Supreme Court cases concerning the degree of "subjective intrusion" and the potential for generating fear and surprise. It held the intrusion resulting from the brief stop at the sobriety checkpoint was, for constitutional purposes, indistinguishable from the checkpoint stops upheld in Martinez-Fuerte.
The further test set out in Brown v. Texas, upon which the Michigan courts based their findings that the stops were an unconstitutional seizure, concerned the "effectiveness" of the stops. The actual language from Brown v. Texas describes the balancing factor as "the degree to which the seizure advances the public interest." 443 U.S. at 51, 99 S.Ct., at 2640. The Court held this passage from Brown was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger. For the purposes of Fourth Amendment analysis, the choice among such reasonable alternative remains with the governmental officials who have a unique understanding of, and a responsibility for, limited resources, including a finite number of police officers.
In Sitz, during the operation of the sobriety checkpoint, the detention of the 126 vehicles that entered the checkpoint resulted in the arrest of two drunken drivers, i.e. 1.6 percent of the drivers passing through the checkpoint were arrested for alcohol impairment. In sum, the Court held the balance of *1221 the State's interest in preventing drunken driving, the extent to which this system can reasonably be said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped, weighs in favor of the state program and is thus consistent with the Fourth Amendment.
Here we hold the trial court properly applied the Supreme Court's balancing test to uphold this particular type of sobriety checkpoint. The Court of Criminal Appeals relied on Martinez-Fuerte, to hold sobriety checkpoints to be unconstitutional. The Supreme Court has now expanded Martinez-Fuerte in Sitz to approve DUI roadblocks under certain controlled circumstances. Thus Smith must also be expanded to allow DUI roadblocks in some situations.
The checkpoint involved here was set up on New Year's Eve. The local paper advised its readers of the checkpoint. The Department put up signs warning motorists of the roadblock. The motorists were not detained if the officers did not detect any sign of alcohol use. The stops lasted approximately ten to fifteen seconds, whereas, the approved delay in Sitz was 25 seconds. The roadblock was successful in removing some intoxicated drivers from the New Year's traffic. The officer did not arrest Geopfert until he observed Geopfert was intoxicated. These factors meet the balancing test prescribed by Brown and Sitz. Under the specific circumstances herein involved, the roadblock does not violate the Fourth Amendment.[2]
TRIAL COURT AFFIRMED.
HUNTER, J., concurs.
JONES, J., concurs in result.
NOTES
[1] In Sitz, as here, no allegations are before us of unreasonable treatment of any person after an actual detention at a particular checkpoint.
[2] We emphasize this opinion in no way puts any stamp of approval on any other type of random sobriety check. The scope of this decision is limited to the particular type of sobriety checkpoint herein involve.