Courtney Hudson Goodson, Justice, concurring in part and dissenting in part. |SI would affirm the decision of the Craighead County Circuit Court denying the motion to suppress submitted by appellant Jimmy Paul Pickle. The Fourth Amendment to the United States Constitution guarantees “[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]” The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of “reasonableness” upon the exercise of discretion by government officials, including law-enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions. Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In most cases, the police must possess probable cause for a seizure to be considered reasonable. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). However, the reasonableness of seizures that are less intrusive than traditional arrest can depend on a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law-enforcement officers. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). I concur in the dissent’s analysis that the balancing test in this case tips in favor of permitting wildlife officers to conduct brief compliance checks limited to those persons who they reasonably suspect are hunting or fishing and those who they reasonably suspect have recently been engaging in those endeavors. The State has great interest in protecting and 13conserving wildlife within our borders, and the nature of the intrusion occasioned by a brief compliance check is slight in comparison. I also agree that hunting and fishing are highly regulated activities that result in a diminished expectation of privacy. Without exception, each state court that has confronted this issue has rejected Fourth Amendment challenges to the authority of wildlife officers to briefly detain persons for the purpose of conducting compliance checks. People v. Maikhio, 51 Cal.4th 1074, 126 Cal.Rptr.3d 74, 253 P.3d 247 (2011); State v. McHugh, 630 So.2d 1259 (La. 1994); State v. Colosimo, 669 N.W.2d 1 (Minn. 2003); State v. Boyer, 308 Mont. 276, 42 P.3d 771 (2002); State v. Halverson, 277 N.W.2d 723 (S.D. 1979); Elzey v. State, 239 Ga.App. 47, 519 S.E.2d 751 (1999); People v. Layton, 196 Ill.App.3d 78, 142 Ill.Dec. 539, 552 N.E.2d 1280 (1990). Justice Blackmun’s concurring opinion in Prouse, supra, which was joined by Justice Powell, also supports the conclusion that a compliance check' conducted by a wildlife officer passes muster under the balancing process. Unlike the dissent, I understand the basis for the majority’s decision. In Arkansas, game wardens are full-fledged law-enforcement officers. Therefore, I am in agreement with the majority’s conclusion that the strictures of the Fourth Amendment apply when a game warden sheds his role as a wildlife officer and commences to perform functions associated with being a law-enforcement officer that have nothing to do with the enforcement of game and fish regulations. However, I cannot agree with the majority’s holding that, in this instance, the officers transgressed the Fourth Amendment by running an NCIC check. This is so for the simple reason that such checks are not searches or seizures within the meaning of the Fourth 11 (Amendment. On this matter of law, I am persuaded by the opinion of the New Jersey Supreme Court in State v. Sloane, 193 N.J. 423, 939 A.2d 796 (2008). There, the court held that, because the NCIC database is comprised of matters of public record, the defendant had no reasonable expectation of privacy in the records maintained in the database. Consequently, the Sloane court reasoned that the check was not a search and that the police officer did not need reasonable and articulable suspicion of criminal activity to access the database. See also State v. Soukharith, 253 Neb. 310, 570 N.W.2d 344 (1997) (holding that an NCIC check is not a seizure within the meaning of the Fourth Amendment and need not be supported by reasonable suspicion). As applied here, the officers completed the compliance inspection, concluded their conversation with the hunting party, and left the camp site. It was only after physically removing themselves from the camp site and the presence of the hunting party that the officers subsequently ran the NCIC check. Thus, it is clear that the officers were not detaining Pickle at the time they conducted the check. Importantly, the mere act of running an NCIC check was neither a search nor a seizure, and the information received afforded the officers reasonable cause to believe that Pickle was violating the law by being a felon in possession of a firearm. As a result, under Rule 4.1 of the Arkansas Rules of Criminal Procedure, the officers had the authority to arrest Pickle, and they were also permitted by Rule 12.1 to conduct a search of Pickle’s person as incident to the lawful arrest. Accordingly, I cannot agree with the majority’s | ¶ jreversal of the circuit court’s decision to deny the motion to suppress.[1] I am authorized to state that Special Justice Terry W. Pool joins this opinion. . I consider the propriety of the officers’ conduct in running the NCIC check as an issue that is properly considered on appeal. Pickle raised and developed this issue below in his argument that the officers illegally detained him for a second time after obtaining the results of the NCIC check. This court can affirm the circuit court if it reached the right result albeit for a different reason. Green v. State, 2015 Ark. 25, 453 S.W.3d 677.