Argued and submitted August 23, 2019, reversed and remanded March 31, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUAQUIN LIRA,
*Defendant-Appellant.*

Jackson County Circuit Court
16CR24560; A167063

484 P3d 1090

In this criminal appeal, defendant challenges his conviction for unlawful possession of a firearm. He contends that he was unlawfully seized by officers who were looking for a witness to a murder committed several days earlier, in which the suspect already had been apprehended. Although officers learned during the encounter that defendant was not the witness for whom they were searching, the officers removed a gun from defendant's pocket, which served as the basis for charges against him. The trial court denied defendant's motion to suppress evidence obtained from the seizure. Defendant assigns error to that denial. He argues that the trial court improperly concluded that the material-witness exception to the warrant requirement embodied in Article I, section 9, of the Oregon Constitution that the Supreme Court recognized in *State v. Fair*, 353 Or 588, 302 P3d 417 (2013), justified the police seizing him. *Held*: The Court of Appeals concluded that the conditions in *Fair* for temporary, "on-the-scene" detention of "a likely material witness" without a warrant were not met, because the detention was not "reasonably necessary to obtain or verify the identity of a likely witness," or to "obtain an account of the crime."

Reversed and remanded.

Lisa C. Greif, Judge.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

## ARMSTRONG, P. J.

In this criminal appeal, defendant challenges his conviction for unlawful possession of a firearm. He contends that he was unlawfully seized by officers who were looking for a man believed to be a witness to a murder committed several days earlier, in which the suspect already had been apprehended. Although officers learned during the encounter with defendant that defendant was not the witness for whom they were searching, the officers removed a gun from defendant's pocket, which served as the basis for charges against him. The trial court denied defendant's motion to suppress evidence obtained from the seizure of defendant, and defendant assigns error to that denial. He argues that the trial court improperly concluded that the material-witness exception to the warrant requirement embodied in Article I, section 9, of the Oregon Constitution that the Supreme Court recognized in *State v. Fair*, 353 Or 588, 302 P3d 417 (2013), justified the police seizing him. We conclude that the conditions in *Fair* for temporary, "on-the-scene" detention of "a likely material witness" without a warrant were not met here, because the detention was not "reasonably necessary to obtain or verify the identity of a likely witness" when officers already knew the name of the witness whom they wished to interview. Neither was the seizure reasonably necessary "to obtain an account of the crime," when, unlike the urgent need to assess the active crime scene in *Fair*, the key circumstances of the crime that the police were investigating had been determined. Accordingly, we reverse and remand.

We review a trial court's denial of a suppression motion for legal error and are bound by the court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). If the trial court did not make express findings and there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently with the trial court's ultimate conclusion. *Id.*

The Medford Area Drug and Gang Enforcement team (MADGE) began investigating a murder that occurred

on April 1, 2016. Police had arrested the man known to have shot the victim; he was in custody awaiting pretrial hearing. In searching for a witness to the murder, MADGE officers had obtained information that a man named Adrian Rodriguez had been at the scene of the crime. Officers had acquired photographs of Rodriguez and had located the address of Rodriguez's mother's home, where he was known to stay.

On April 5, 2016, a confidential informant told Detective Shopp, a MADGE team member, that Rodriguez was "commonly seen" in a white Cadillac. MADGE officers obtained a vehicle description and license plate number for the Cadillac. In two separate cars, officers patrolled a neighborhood looking for the Cadillac. Spotting it, officers saw an open driver's side door and four men they described as Hispanic sitting in the car, but they could not determine whether one of the men was Rodriguez. The officers parked both of their patrol cars behind the Cadillac, got out of their cars, and split into two groups with two officers approaching each side of the car. At least one officer drew his gun. They identified themselves as police officers and told the occupants of the Cadillac to show their hands.

Once the men had complied with that order, the officers asked whether any of them had weapons. Defendant responded that he had a gun in his pocket. One officer took control of defendant's hands[1] and retrieved a gun from defendant's jacket pocket. During that time, all four occupants of the vehicle remained completely cooperative. After the gun had been removed from defendant's pocket, officers obtained the identity of the four men, ultimately learning that Rodriguez was not among them. The state subsequently charged defendant with unlawful possession of a firearm, ORS 166.250, for the gun retrieved from his pocket.

Defendant moved to suppress evidence of the firearm, arguing that the officers had seized him without probable cause or a warrant and under circumstances in which no exception to the warrant requirement in Article I, section 9,

---

[1] One officer testified that Detective Pomeroy had placed defendant in handcuffs, but Pomeroy could not recall whether he had done that.

applied.[2] Specifically, defendant contended that, when officers seized him in their search for Rodriguez, the material-witness exception to the warrant requirement recognized in *Fair* did not justify his seizure.

As we will discuss in detail below, *Fair* held that, in appropriate circumstances, where officers do not suspect the person of committing a crime, Article I, section 9, permits officers "to stop and detain someone for on-the-scene questioning whom they reasonably suspect can provide material information about a crime's commission." 353 Or at 608. Defendant argued that the "appropriate circumstances" that justified the seizure in *Fair* did not exist in his case. He contended that officers did not detain him "on the scene" of the crime, and that the detention was not "reasonably necessary" to identify a material witness or obtain an account of the crime. In its written response, the state conceded that the officers had seized defendant but argued that they had properly detained him in an attempt to discover whether Rodriguez, the man whom officers reasonably believed to be a material witness, was in the vehicle.

The court held a hearing on defendant's motion, and the state presented testimony from the officers involved. The court later ruled that, as the state had conceded, defendant was seized. Further, relying only on *Fair* for its conclusion, the trial court determined that the seizure was lawful. The court explained that, even though defendant had been seized several days after and up to ten miles away from the crime scene, and that such facts did not "fit exactly into the cookie cutter of [*Fair*]," officers, nevertheless, could "stop and temporarily detain a person for questioning if they believe that person is a material witness to a crime." The court determined that, under the circumstances, the officers "had a reasonable belief" that Rodriguez was a material witness and that the officers were acting on information that Rodriguez might be in the Cadillac. After the court denied his motion, defendant executed a conditional guilty plea to the charge,

---

[2] Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

reserving in writing his right to challenge the court's ruling on the motion. Defendant appealed.

On appeal, the parties reprise the arguments that they made below. Defendant asks us to resolve whether *Fair* applies to justify the officers' warrantless seizure, and if so, whether the seizure was reasonably necessary. The parties agree that the encounter was a seizure. The narrow question before us then is whether each element of the material-witness rule was satisfied, justifying the seizure.

Under Article I, section 9, a person is temporarily seized if "a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives" that person of "liberty or freedom of movement;" or "if a reasonable person under the totality of the circumstances" would believe their liberty to be so restricted. *State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010). Law enforcement officers normally must have a constitutional justification for temporarily seizing or stopping a person to investigate that person, and the officer's activities must be reasonably related to that investigation and reasonably necessary to effectuate it. *State v. Watson*, 353 Or 768, 781, 305 P3d 94 (2013). Where, as here, officers impose a temporary restraint of a person's liberty for the purpose of criminal investigation, such a detention "must be justified by a reasonable suspicion of criminal activity." *State v. Rodgers*, 347 Or 610, 621, 227 P3d 695 (2010).

In *Fair*, the Oregon Supreme Court recognized another justification for a warrantless seizure of a person. The question in *Fair* was whether it was lawful for police to detain someone—not based on reasonable suspicion of a crime—but to question them as a potential witness to, or victim of, a crime. 353 Or at 605. Resolving that question in the affirmative, the court enumerated the conditions that must be satisfied for such a detention to be constitutionally permissible. The facts before the court were that police had responded to a suspected domestic violence incident after receiving an incomplete emergency 9-1-1 call in which a woman was heard saying "stop it" and "get off me" while a man yelled in the background. *Id*. at 590. When officers arrived at the house from which the 9-1-1 call had

been placed, the woman and her husband answered the door together. The woman had a large swollen area over one eye, while her husband showed no signs of injury. *Id*. at 591. The officers separated the woman from her husband, and questioned the woman on the porch while her husband yelled at her from the yard not to say anything. *Id*. The officers asked the woman for identification and about the circumstances of the aborted 9-1-1 call. *Id*. During the questioning, a syringe cap fell out of the woman's pant leg, which ultimately led to her being arrested and charged for drug possession. *Id*. at 592.

In her motion to suppress, which the trial court denied, the woman had argued that, in the absence of a subpoena, a material witness order, or an exigency, any seizure to question her as a witness was unreasonable and in contravention of Article I, section 9. *Id*. at 603-04.

On review of the denial of her motion, the Supreme Court determined that the seizure was lawful, holding that "officers constitutionally may, in appropriate circumstances, stop and temporarily detain for questioning a person whom they reasonably believe is a potential material witness to a crime." *Id*. at 609. The court announced a basic test, holding that the stop and temporary on-the-scene detention of a likely material witness will be constitutional if each of the following three conditions are satisfied:

> "(1) the officer reasonably believes that an offense involving danger of forcible injury to a person recently has been committed nearby; (2) the officer reasonably believes that the person has knowledge that may aid in the investigation of the suspected crime; and (3) the detention is reasonably necessary to obtain or verify the identity of the person, or to obtain an account of the crime."

*Id*. The court explained that the rule "allows an officer coming upon the scene of a recently committed crime to 'freeze' the situation and obtain identifications and an account of the circumstances from the persons present." *Fair*, 353 Or at 606 n 9 (quoting American Law Institute, *A Model Code of Pre-Arraignment Procedure* at 9-10 (1975) (*Model Code*). Moreover, the court explained that "it would be 'irrational' not to authorize officers responding to 'confused, emergency

situations' to 'freeze the situation for a short time, so that [they] may make inquiry and arrive at a considered judgment about further action to be taken.'" *Fair*, 353 Or at 607 (quoting *Model Code* § 110.2 at 272) (brackets in *Fair*).

We address defendant's argument that the third prong of the rule—whether the detention was "reasonably necessary" to identify Rodriguez or to "obtain an account of the crime"—is not satisfied.[3] In defendant's view, because police already knew the identities of the suspect, the victim, and a likely witness—Rodriguez—the exigency created by the need to "freeze" a situation to obtain that information had long since dissipated. Additionally, in defendant's view, the necessity to locate Rodriguez was not as great as it would have been had the suspect remained unidentified and at large. Because officers knew Rodriguez's identifying information, and because the material details concerning who had committed the crime had been resolved, it was not reasonably necessary to resort to seizing defendant and three other men who had no relationship to the crime.

The state does not directly respond to defendant's argument that the officers' conduct failed to satisfy the third prong in *Fair*. Although the trial court expressly relied on the rule in *Fair* to justify its conclusion that the seizure of defendant was lawful, the state asks us in its answering brief to consider a different test, one recognized in *Illinois v. Lidster*, 540 US 419, 124 S Ct 885, 61 L Ed 2d 357 (2004). That test weighs "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Lidster*, 540 US at 427. The state contends that, because murder is a matter of grave public concern, and because defendant's detention was not lengthy, the seizure was reasonable and justified. However, the state does not discuss the "public interest" factor that the court recognized in *Lidster*, which, in that case, involved the urgent need to identify and locate a hit-and-run driver who had fled the scene of a fatal crash involving a cyclist. The

---

[3] Because we conclude that the state failed to establish that the third prong of the rule in *Fair* was satisfied, we do not reach defendant's argument that the first prong of the rule also was not satisfied, where defendant contends that his detention was neither near the scene of the crime nor made soon after the crime.

suspect in *Lidster* remained unidentified and at large, and the crime completely unresolved. Here, the suspect had been apprehended and the identities of the people involved had been determined. We conclude that the individual circumstances in *Lidster* are not appropriate for comparison in this case.

Concerning whether detaining defendant was reasonably necessary to "obtain an account of the crime," the state's argument centers on the importance to MADGE officers to learn the extent to which the crime may have been gang related. Both the state and defendant agree that the key to the analysis concerning what police conduct is reasonably necessary is directly related to the exigency of the situation at hand—that is, the immediacy of the officers' need to address the situation with which they are confronted.

Supporting its determination that the seizure was reasonably necessary, the *Fair* court explained that the circumstances of the aborted 9-1-1 call "created a patent exigency excusing a warrant." 353 Or at 610. That is, the context animating the court's decision in *Fair* entailed an immediate need for the police to discover—in the spur-of-the-moment—whether or how the assault had occurred, and who had been involved. *Id.* at 611 ("exigent circumstances justified ordering the defendant and her husband onto the porch, for purposes of taking control of the unpredictable and potentially violent situation").

As defendant notes, however, the circumstances here did not create the sort of "patent exigency" that the Supreme Court concluded would excuse a warrant. MADGE officers did not detain defendant in response to an emergency 9-1-1 call—or any emergency situation at all. Nor were the officers faced with circumstances in which it was crucial to prevent further harm by the suspect to the victim, or to assess the facts concerning which person was the suspect and which was the victim. Officers here were not responding to an ongoing crime, arriving in the middle of a confusing scene, or intervening to prevent a suspect from evading arrest. With respect to what was reasonably necessary to obtain an account of the crime in *Fair*, it was that context involving the pressures of an emergency that prompted the

police to order the woman to remain on the porch so that they could assess the dispute.

In contrast, no such spontaneous investigation was necessary here. MADGE became involved after the suspect was in custody, upon information that murder might be gang related. The officers' conduct here—seizing defendant in the Cadillac days after the shooting—was not essential to take control of an "unpredictable and potentially violent situation" or to assess the immediate circumstances of the crime, like it was for the officers in *Fair*.

The state urges us to consider that an exigency existed here because officers "had not yet determined whether the shooting was gang-related." In the state's view, it was reasonable for officers to detain defendant in their search for Rodriguez, because they believed that Rodriguez "may have been attempting to evade police," based on the fact that he "had not come forward" on his own accord. Thus, according to the state, the exigency here involved the officers' need to speak to Rodriguez "without further delay," and to "investigate all possible methods of contacting Rodriguez." Those possible methods included seizing defendant, who was sitting in a car that happened reportedly to be "associated with" Rodriguez.

We disagree. That the murder may have been gang related does not bring the circumstances here within the scope of the type of exigency that justified the detention of a likely material witness in *Fair*. Obtaining the account of a witness to discover the extent to which a shooting was gang related, if that information is indeed material to the charged crime, is the type of investigative effort suitably accomplished through normal investigative means, for example, by subpoena or issuance of a material witness order. Concerning the former, ORS 136.557 to 136.570 provides for issuance of subpoenas to compel attendance of witnesses at preliminary hearings, grand jury proceedings, and trial.

As to the latter, in circumstances in which it is the sworn "reasonable belief" of a district attorney that a witness who possesses "information material to the determination of the action against the defendant" will not appear, ORS 136.608 authorizes the district attorney to apply to the

court for a material witness order. Application for such an order may be sought when an indictment has been filed and is pending; a grand jury proceeding has been commenced; or a complainant's or a district attorney's information alleging the commission of a felony has been filed and is pending. ORS 136.608(1)-(2). The effect of applying for such an order is that, if the court determines that the application is well founded, the court "shall enter an order directing the prospective witness to appear before the court" or "issue a warrant of arrest directing the sheriff to take the person into custody." ORS 136.611(1)(a)-(b).

Here, MADGE officers were assisting in the investigation of a murder, in which case the prime suspect was in custody. It is likely in such a case that an indictment would soon follow. Instead of seizing Lira in search for Rodriguez—the reported witness to the murder—officers could have brought to the district attorney's attention information concerning Rodriguez's importance as a witness to the murder. If the district attorney "reasonabl[y] belie[ved]" that Rodriguez "possess[ed] information material to the determination of the action" against the suspect defendant, and that Rodriguez would not appear on his own accord, a material witness order could have been sought. At that point it would be up to the court to order Rodriguez to appear, or to order his arrest to secure his appearance. Thus, the legislature took care to provide the above-described mechanisms to obtain witness testimony, and, under the circumstances here, where no exigency existed, those mechanisms would have been a reasonable path to pursue.

As to whether detaining defendant was "reasonably necessary to obtain or verify the identity of the person," in focusing its analysis on *Lidster*, the state does not address why it was necessary to seize defendant and the other people in the Cadillac to do that. At the time that the officers seized defendant, they knew of Rodriguez's identifying information, a local address, and his usual whereabouts. Hence, there was no need to stop anyone to obtain, in the first instance, Rodriguez's identity. Nor was there a need to verify defendant's identity. That was particularly true given the lack of any exigency.

In sum, we conclude that the essential rationale of *Fair* that makes the stop of a likely witness constitutionally permissible is grounded in the exigent circumstances that arise in the context of an emergency response by officers to an apparent incident involving danger of forcible injury. Here, the state failed to establish that the third prong of the material-witness rule of *Fair* was satisfied. The seizure in this case was not reasonably necessary to verify or obtain the identity of a material witness, nor was the seizure reasonably necessary to obtain an account of the crime. We therefore conclude that the trial court erred in denying defendant's suppression motion.

Reversed and remanded.