# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KM-00510-SCT

*LAVERN D. KENDRICK a/k/a LAVERN KENDRICK a/k/a LAVERNE KENDRICK*

*v.*

*STATE OF MISSISSIPPI AND TOWN OF PUCKETT*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/2024 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF, III |
| TRIAL COURT ATTORNEYS: | MARK C. BAKER, SR. |
| | JAMES LEE KELLY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES LEE KELLY |
| ATTORNEY FOR APPELLEE: | MARK C. BAKER |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 01/30/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**SULLIVAN, JUSTICE, FOR THE COURT:**

¶1. Lavern Kendrick was convicted in the Puckett, Mississippi, Municipal Court of misdemeanor driving under the influence (DUI), first offense, and possession of drug paraphernalia. Kendrick appealed his misdemeanor convictions to the Rankin County County Court for a trial de novo. There, Kendrick filed a motion to suppress the evidence against him based on the claim that the traffic stop leading to his arrest by officers with the Puckett Police Department was unlawful. The county court denied the motion and subsequently found Kendrick guilty of both charges. The Rankin County Circuit Court affirmed Kendrick's convictions on appeal. Kendrick appeals, claiming that the county court

erred by denying his motion to suppress. Because we find no merit to Kendrick's claim, we affirm his convictions.

## FACTS

¶2. On February 23, 2023, police officers Joe Latham and Adam McGuffee set up a safety checkpoint at a four-way stop at the intersection of Highway 18 and Highway 13 in Puckett, Mississippi.

¶3. Officer McGuffee testified that he saw a vehicle driven by Kendrick stop short of the checkpoint, about one hundred yards back. They waved the vehicle up to the checkpoint. Officer Latham testified that the vehicle proceeded up to the officers "at a very slow roll."

¶4. When Kendrick arrived at the checkpoint, "he was asked for his driver's license and insurance, [and] he seemed to be nervous." Officer Latham testified that he had just finished checking another vehicle at the checkpoint when Kendrick pulled up to where Officer McGuffee was standing. Officer McGuffee was talking to Kendrick when Officer Latham walked over to where Officer McGuffee was standing next to Kendrick's vehicle. Officer Latham said that

> Kendrick had some papers in his hand, and he leaned over - - as we asked for either his license or insurance, he leaned over, and I was watching him and I noticed him look at something. And when I seen his eyes, I looked, and I could see the bulb of a meth pipe.

¶5. Officer Latham said the "meth pipe" was laid up next to a cooler in the vehicle. Officer Latham said that Kendrick

> was already acting nervous or, you know, a little what I would call out of the ordinary for some - - someone, so . . . . And from that point, I just told him - - I said, "Well, go ahead and step on out of the vehicle," and he turned back like

2

he was going to do something. I was like, "No, no, no, come on - - come on back out of the vehicle," and he come to the back. So I asked him several times if there was anything illegal in the vehicle, and he - - he stated, no, that he was just tired. And he diverted and started to say, "Well, I usually come down this road and this road," so he was kind of avoiding the question. I had already seen the evidence that I needed to see that was in there, but I was giving him the opportunity to tell me the truth.

¶6.    Officer Latham said that Kendrick "had the smell of like - - kind of like burnt plastic, and that's the way methamphetamine smells." According to Officer Latham, "[i]f you've been - - ever been in someone's vehicle that smoked meth, that's the same smell that I could smell from that vehicle." Officer Latham said the smell was coming from the vehicle and Kendrick's person. Officer Latham said that Kendrick "was also kind of - - kind of sped up and jittery, not - - kind of stuttering, so like he was trying to speak too much and kind of crossing over his words a little bit."

¶7.    Officer McGuffee testified that the smell from Kendrick's person was "[a] foul odor, a nasty smell," which based on his training was the smell of someone who had consumed crystal methamphetamine.

¶8.    Both officers testified that based on their experience and the facts and circumstances at the time of the stop, Kendrick was operating a vehicle under the influence of crystal methamphetamine. The officers searched Kendrick's vehicle and located drug paraphernalia and crystal methamphetamine. Officer Latham then *Mirandized*[1] Kendrick. Afterwards, Kendrick said the crystal methamphetamine was his and that he had smoked some within three to five hours before the stop.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶9. Kendrick was arrested and charged with misdemeanor first-offense DUI and possession of drug paraphernalia. He was convicted of those charges in municipal court, after which he appealed to the county court for a trial de novo. There, Kendrick filed a motion to suppress the evidence against him, claiming that the "suspicionless traffic stop (roadblock)" was unconstitutional and that the officers had no probable cause or reasonable suspicion to believe that Kendrick had committed any offense.

¶10. A hearing was held during which Kendrick called Officer McGuffee to testify. Officer McGuffee said that he and Officer Latham had set up a "safety checkpoint" to "check[] driver's license, insurance, and then whatever is seen in the vehicles." Officer McGuffee said that every vehicle that came through the safety checkpoint was checked for driver's licenses and proof of insurance.

¶11. Following the hearing, the trial court acknowledged that Officer McGuffee's testimony "was a little bit all over the board about the purpose for the stop." The trial court stated that it was not surprised by this because Officer McGuffee

> was the most inexperienced law enforcement officer for the Town of Puckett. That's not his fault. That's just the nature of what it is. He started in January of 2023. He's a part-time worker. He does other work primarily. This is a part-time job for him.

¶12. Ultimately, the trial court concluded as follows:

> I don't find there's enough evidence to support or sustain the motion that the roadblock was improper. I believe there was adequate testimony that indicated that the principal purpose was a permissible - - legally permissible reason under [*Borsi v. State*, 339 So. 3d 191 (Miss. Ct. App. 2022)].

4

¶13. Kendrick contends on appeal that the trial court erred by denying his motion to suppress when it became clear through Officer McGuffee's testimony at the suppression hearing that the primary purpose of the roadblock was general crime control. Kendrick points to Officer McGuffee's testimony when he said that they wanted to "make sure everyone was cooperating" and "to make sure everyone was doing right."

**DISCUSSION**

¶14. "In reviewing the denial of a motion to suppress, we must determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence." *Galloway v. State*, 122 So. 3d 614, 669 (Miss. 2013) (internal quotation marks omitted) (quoting *Gore v. State*, 37 So. 3d 1178, 1187 (Miss. 2010)). "Review of the record is not limited to evidence presented to the trial judge at the suppression hearing; this Court may look to the entire record to determine whether the trial judge's findings are supported by substantial evidence." *Id.* (citing *Holland v. State*, 587 So. 2d 848, 855 (Miss. 1991)).

¶15. Both the Fourth Amendment to the United States Constitution and article 3, section 23, of the Mississippi Constitution protect persons from unreasonable searches and seizures. *McLendon v. State*, 945 So. 2d 372, 379 (Miss. 2006), *cert. denied*, 551 U.S. 1145, 127 S. Ct. 3008, 168 L. Ed. 2d 727 (2007). This protection "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *Id.* (internal quotation marks omitted) (quoting *Brown v. Texas*, 443 U.S. 47, 50, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979)).

¶16. A search and seizure made from a roadblock by law enforcement set up for the primary purpose of detecting evidence of ordinary criminal activity does not pass the Fourth Amendment's reasonableness test and therefore is unconstitutional. *Id.* at 380 (citing *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S. Ct. 447, 454, 148 L. Ed. 2d 333 (2000)). It may, however, pass constitutional muster if the primary purpose behind the roadblock serves a legitimate public interest—other than a need for general law enforcement. *Id.*

¶17. In deciding whether a roadblock constituted a seizure of an individual in violation of the Fourth Amendment and section 23, this Court considers the balancing test outlined in *Brown* for determining the reasonableness of the seizure. *McLendon*, 945 So. 2d at 379 (citing *Brown*, 443 U.S. at 50-51). The *Brown* test "weighs 'the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.'" *McLendon* (quoting *Brown*, 443 U.S. at 50-51). Put another way, "[t]he reasonableness of seizures that are less intrusive than a traditional arrest . . . depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* (alterations in original) (internal quotations marks omitted) (quoting *Brown*, 443 U.S. at 50).

¶18. Both this Court and the Court of Appeals have held that the State has a legitimate "interest in ensuring that drivers of vehicles are properly licensed and that vehicles are properly registered and periodically inspected." *Id.* (internal quotation mark omitted) (quoting *Briggs v. State*, 741 So. 2d 986, 989 (Miss. Ct. App. 1999)). Routine roadblocks, in which every vehicle traveling through it is stopped, rather than random stops outlawed by

the Supreme Court in *Delaware v. Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979), is an effective means of ensuring the State's interest in making sure the people on its roads are properly licensed. *McLendon*, 945 So. 2d at 380-81 (citing *Dale v. State*, 785 So. 2d 1102 (Miss. Ct. App. 2001)).

¶19. Here, during direct examination at the suppression hearing, defense counsel asked Officer McGuffee about the purpose of the road block. Officer McGuffee said they referred to it as a safety checkpoint. Officer McGuffee initially then said the purpose of the safety checkpoint was to check for a "driver's license, insurance, and then whatever else is seen in the vehicle." When asked further by defense counsel whether the purpose of the road block was "basically just general law enforcement" and "general crime control," Officer McGuffee responded in the affirmative.

¶20. On cross-examination by the prosecution, Officer McGuffee testified that every vehicle that passed through the safety checkpoint was checked for a driver's license and proof of insurance. Officer McGuffee said that Officer Latham has more seniority than he has, and when they work together on the same shift, Officer Latham takes charge for that particular shift. Officer McGuffee said that Officer Latham spoke to the chief of police for Puckett prior to setting up the safety checkpoint.

¶21. As mentioned, the trial court acknowledged at the end of the suppression hearing that due to Officer McGuffee's inexperience, "his testimony was a little bit all over the board about the purpose for the stop." The trial court, nevertheless, concluded that the safety checkpoint was permissible based on case law from the Court of Appeals and this Court.

7

¶22. We find that the record supports the trial court's conclusion. With permission from the chief of police, Officer McGuffee and Officer Lathum set up a safety checkpoint, the primary purpose of which was to check that each driver passing through it was properly licensed and insured. Evidence was presented that this was a routine safety checkpoint and that every vehicle passing through was briefly stopped.

¶23. The primary purpose of checking driver's licenses and insurance cards substantially outweighed the minimal intrusion of Kendrick's individual liberty. And the safety checkpoint did not violate the search-and-seizure provision of either the Fourth Amendment or the state constitution. *McLendon*, 945 So. 2d at 382.

## CONCLUSION

¶24. Kendrick's misdemeanor convictions are affirmed.

¶25. **AFFIRMED.**

**KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE, GRIFFIS AND BRANNING, JJ., CONCUR. RANDOLPH, C.J., NOT PARTICIPATING.**